KATHLEEN A. HERKENHOFF (168562)
kah@weiserlawfirm.com
THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 794-1441
Facsimile:  (858) 794-1450

Co-Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE CYTRX CORP. STOCKHOLDER DERIVATIVE LITIGATION | Master File No. 2:14-cv-06414-GHK (PJWx) |
| This Document Relates To:<br><br>ALL ACTIONS. | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS<br><br>Date:     December 8, 2014<br>Time:    9:30 a.m.<br>Judge:  Hon. George H. King<br>Ctrm.:   650 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  FACTUAL BACKGROUND .......................................................... 3

III. ARGUMENT ................................................................................. 4

    A.  Plaintiffs Adequately Allege That Pre-Suit Demand Was Futile ......... 4

        1.  Applicable Legal Standards Governing Demand Futility .......... 4

        2.  Plaintiffs Sufficiently Raise a Reasonable Doubt That a Majority of the Demand Directors Lack Disinterest and/or Independence ........................................................... 6

            a.  Demand Is Excused Because a Majority of the Demand Directors Received Spring-Loaded Stock Options ......................................................... 6

            b.  Demand Is Excused Because the Compensation Committee Members Face a Substantial Likelihood of Liability for Approving Spring-Loaded Stock Options and Their Actions Were Not Protected By Business Judgment ............................. 8

            c.  Demand Is Excused Because the Demand Directors' Adoption or Tacit Approval of an Illegal Business Strategy Is Not a Presumptively Protected Business Judgment ........................... 10

            d.  Demand Is Excused Because the Entire Board Faces a Substantial Likelihood of Liability for Causing CytRx To Disseminate False and Misleading Information ...................................... 12

            e.  Defendants Kriegsman and Rubinfeld Are Not Independent ..................................................... 14

    B.  Plaintiffs Sufficiently Plead All Causes of Action Against Defendants ........................................................... 15

        1.  Pleading Standards on a Motion to Dismiss ........................... 15

        2.  Plaintiffs' Claims Do Not Sound in Fraud ............................. 16

        3.  Plaintiffs Adequately Allege Claims for Breach of Fiduciary Duty ...................................................................... 17

        4.  Plaintiffs Adequately Allege Unjust Enrichment .................... 18

        5.  Plaintiffs Adequately Allege Gross Mismanagement and Abuse of Control ................................................................... 19

1

2                                                                                    **Page**

3
            6.     Plaintiffs' Second Claim Is Not a "Caremark" Claim for
4                  Failure to Monitor ..................................................................... 20

5           7.     Defendants' Reliance on CytRx's Exculpatory Provision
                   Is Inappropriate at This Juncture and Inapplicable ................. 21
6
     IV.    CONCLUSION ............................................................................... 23
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford,*
   554 F. Supp. 2d 538 (D. Del. 2008) ................................................................. 22

*Alidina v. Internet.com Corp.,*
   No. Civ.A. 17235-NC, 2002 WL 31584292 (Del. Ch. Nov. 6, 2002) .............. 22

*Allaun v. Consol. Oil Co.,*
   16 Del. Ch. 318, 147 A. 257 (Del. Ch. 1929) ........................................... 19, 20

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984)....................................................................*passim*

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................... 15, 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................ 15

*Belova v. Sharp,*
   No. CV 07-299-MO, 2008 WL 700961 (D. Or. 2008) ........................... 8, 19, 22

*Beneville v. York,*
   769 A.2d 80 (Del. Ch. 2000) ........................................................................ 6, 10

*Brehm v. Eisner,*
   746 A.2d 244 (Del. 2000)........................................................................ 4, 5, 20

*Cal. Pub. Emps.' Ret. Sys. v. Coulter,*
   No. Civ.A. 19191, 2002 WL 31888343 (Del. Ch. Dec. 18, 2002) ................... 11

*Cambridge Ret. Sys. v. Bosnjak,*
   C.A. No. 9178-CB, 2014 WL 2930869 (Del. Ch. Jun. 26, 2014).................. 7, 8

*Cinerama, Inc. v. Technicolor, Inc.,*
   663 A.2d 1156 (Del. 1995)............................................................................. 17

*Conrad v. Blank,*
   940 A.2d 28 (Del. Ch. 2007) ........................................................................... 7

1
2                                                                                                    **Page**
3
4   *Edmonds v. Getty*,
        524 F. Supp. 2d 1267 (W.D. Wash. 2007) ....................................................... 8, 9
5
6   *Emerald Partners v. Berlin*,
        726 A.2d 1215 (Del. 1999)........................................................................... 22, 23
7
8   *Engel v. Sexton*,
        No. Civ.A. 06-10447, 2009 WL 361108 (E.D. La. 2009) ................................... 9
9
10  *Gatz v. Ponsoldt*,
        925 A.2d 1265 (Del. 2007).................................................................................. 5
11
12  *Grimes v. Donald*,
        673 A.2d 1207 (Del. 1996).................................................................................. 5
13
14  *Grobow v. Perot*,
        526 A.2d 914 (Del. Ch. 1987) ........................................................................... 17
15
16  *Grobow v. Perot*,
        539 A.2d 180 (Del. 1988)............................................................................. 5, 17
17
18  *Heller v. Kiernan*,
        No. Civ.A. 1484-K, 2002 WL 385545 (Del. Ch. Feb. 27, 2002),
        *aff'd*, 806 A.2d 164 (Del. 2002) ....................................................................... 17
19
20  *In re Abbott Labs. Derivative S'holders Litig.*,
        325 F.3d 795 (7th Cir. 2003) ............................................................................. 21
21
22  *In re Adolor Corp. Derivative Litig.*,
        No. 04-3649, 2009 WL 1325738 (E.D. Pa. May 12, 2009) ............................... 15
23
24  *In re Baxter Int'l, Inc. S'holders Litig.*,
        654 A.2d 1268 (Del. Ch. 1995) ........................................................................... 5
25
26  *In re Caremark Int'l Inc. Derivative Litig.*,
        698 A.2d 959 (Del. Ch. 1996) ..................................................................... 20, 21
27
28  *In re China Agritech, Inc. S'holder Derivative Litig.*,
        C.A. No. 7163-VCL, 2013 WL 2181514 (Del. Ch. May 21, 2013) ..................... 4

1

2                                                                      **Page**

3

4 *In re Computer Sciences Corp. Derivative Litig.,*
    244 F.R.D. 580 (C.D. Cal. 2007) .......................................................... 7

5

6 *In re Cooper Cos., Inc. S'holders Derivative Litig.,*
    No. 12584, 2000 WL 1664167 (Del. Ch. Oct. 31, 2000)................................ 15

7

8 *In re Cray, Inc. Derivative Litig.,*
    431 F. Supp. 2d 1114 (W.D. Wash. 2006) ......................................................... 15

9 *In re HealthSouth Corp. S'holders Litig.,*
10     845 A.2d 1096 (Del. Ch. 2003), *aff'd* 2004 Del. LEXIS 175
    (Del. Apr. 14, 2004) ......................................................... 18

11

12 *In re InfoUSA, Inc. S'holders Litig.,*
    953 A.2d 963 (Del. Ch. 2007) ......................................................... 12

13

14 *In re Maxim Integrated Prods., Inc., Derivative Litig.,*
    574 F. Supp. 2d 1046 (N.D. Cal. 2008) ......................................................... 7

15

16 *In re Mervyn's Holdings, LLC v. Lubert-Adler Grp. IV, LLC,*
    426 B.R. 488 (Bankr. D. Del. 2010)................................ 22

17

18 *In re MRV Commc'ns, Inc.,*
    No. CV 08-3800 GAF(RCX), 2010 WL 1891717 (C.D. Cal. May 10, 2010)..... 7

19

20 *In re Oracle Corp. Derivative Litig.,*
    824 A.2d 917 (Del. Ch. 2004) ................................................... 14, 15

21 *In re Pfizer, Inc. S'holder Derivative Litig.,*
    722 F. Supp. 2d 453 (S.D.N.Y. 2010)............................................10, 11, 21, 23

22

23 *In re TASER Int'l, Inc. S'holder Derivative Litig.,*
    No. CV-05-123-PHX-SRB, 2006 WL 687033 (D. Ariz. Mar. 17, 2006).... 16, 17

24

25 *In re Tyson Foods, Inc.,*
    919 A.2d 563 (Del. Ch. 2007) ......................................................*passim*

26

27 *In re Tyson Foods, Inc.,*
    No. Civ.A. 1106-CC, 2007 WL 2351071 (Del. Ch. Aug. 15, 2007) ............ 9, 10

28

1

2                                                                                          **Page**

3

4
*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006) ...............................................................13

5

6
*In re Zoran Corp. Derivative Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007)................................................................7

7

8
*Int'l Ins. Co. v. Johns*,
    874 F.2d 1447 (11th Cir. 1989) .........................................................................11

9

10
*Jackson Nat'l Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999) ...........................................................................19

11

12
*Kahn v. Kolberg Kravis Roberts & Co., L.P.*,
    23 A.3d 831 (Del. 2011) ....................................................................................13

13
*Kahn v. Roberts*,
    679 A.2d 460 (Del. 1996) ..................................................................................11

14

15
*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) ...................................4

16

17
*Laborers Int'l Union of N. Am. v. Bailey*,
    310 F. App'x 128 (9th Cir. 2009)........................................................................7

18

19
*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998).................................................................................17, 23

20

21
*McCabe v. Foley*,
    424 F. Supp. 2d 1315 (M.D. Fla. 2006) ............................................................15

22

23
*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*,
    854 A.2d 121 (Del. Ch. 2004) .....................................................................11, 17

24
*Miller v. AT&T Co.*,
    507 F.2d 759 (3d Cir. 1974) .............................................................................11

25

26
*Mizel v. Connelly*,
    No. Civ.A. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999) .........................15

27

28

1

2                                                                                                  **Page**

3

4    *O'Reilly v. Transworld Health Care, Inc.,*
       745 A.2d 902 (Del. Ch. 1999) .............................................................. 16

5

6    *Pereira v. Cogan,*
       294 B.R. 449 (S.D.N.Y. 2003) ...................................................... 11, 12

7

8    *Pereira v. Farace,*
       413 F.3d 330 (2d Cir. 2005) ......................................................... 11, 12

9    *Pfeiffer v. Toll,*
       989 A.2d 683 (Del. Ch. 2010) ........................................................... 13

10

11   *Rabkin v. Philip A. Hunt Chem. Corp.,*
       547 A.2d 963 (Del. 2000) ............................................................. 19, 20

12

13   *Rales v. Blasband,*
       634 A.2d 927 (Del. 1993) ......................................................... 4, 5, 7, 15

14

15   *Ryan v. Gifford,*
       918 A.2d 341 (Del. Ch. 2007) .................................................... *passim*

16

17   *Ryan v. Lyondell Chem. Co.,*
       C.A. No. 3176-VCN, 2008 WL 4174038 (Del. Ch. Aug. 29, 2008) ................ 23

18

19   *Shamrock Holdings of Cal., Inc. v. Iger,*
       No. 1330-N, 2005 WL 1377490 (Del. Ch. June 6, 2005) ................................ 23

20

21   *Singh v. Ilchert,*
       784 F. Supp. 759 (N.D. Cal. 1992) ............................................... 15, 16

22

23   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
       551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ............................. 16

24   *Travis v. Middlestaedt,*
       No. CV06-2341LEW GGH, 2008 WL 755842 (E.D. Cal. Mar. 19, 2008) ..... 7, 8

25

26   *U.S. v. City of Redwood City,*
       640 F.2d 963 (9th Cir. 1981) ............................................................. 16

27

28

**Page**

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) .................................................................. 16

*Weiss v. Swanson*,
   948 A.2d 433 (Del. Ch. 2008) ............................................... 6, 7, 8, 17

**STATUTES, RULES AND REGULATIONS**

8 Delaware Chancery
   §102(b)(7) ........................................................................... 21, 22, 23

15 U.S.C.
   §77q(b) .................................................................................... 11

Federal Rules of Civil Procedure
   Rule 9(b) ............................................................................. 16, 17
   Rule 12(b)(3) .............................................................................. 3
   Rule 12(b)(6) ............................................................................ 16
   Rule 23.1 ................................................................................ 3, 5
   Rule 25(a) ................................................................................. 1

Lead Plaintiffs Jared Pankratz and Jack Taylor (collectively, "Plaintiffs") in the above-captioned action (the "Action"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to Defendants'[1] Motion to Dismiss Complaints[2] (Dkt. No. 25) (the "Defendants' Motion").[3]  As stated herein, Plaintiffs' Verified Shareholder Derivative Complaints, brought on behalf of CytRx, raise a reason to doubt the disinterestedness and/or independence of a majority (if not all) of the Demand Directors,[4] excusing pre-suit demand.  Additionally, the Complaint adequately alleges claims upon which relief may be granted.  Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

## I.    INTRODUCTION

This derivative Action is about an illicit stock promotion scheme orchestrated by Defendants in violation of their fiduciary duties of loyalty and good faith to CytRx and its shareholders.  In 2013, Defendants secretly hired stock promotion firm the Dream Team Group ("Dream Team") and/or its subsidiary to begin a misleading campaign designed to boost CytRx's stock price. Defendants' plan (which was not

---

[1]    "Defendants" refers to all the individual defendants: Steven Kriegsman ("Kriegsman"), John Caloz ("Caloz"), Marvin Selter ("Selter"), Louis Ignarro ("Ignarro"),  Joseph  Rubinfeld  ("Rubinfeld")  and  Richard  Wennekamp ("Wennekamp"). Nominal Defendant CytRx Corporation ("CytRx" or the "Company") is excluded from this definition because although Defendants share counsel with CytRx, Defendants' Motion expressly states that it is not brought on behalf of CytRx.

[2]    Unless otherwise noted, all paragraph references herein are to the Verified Shareholder Derivative Complaint (the "Complaint") filed by Plaintiff Pankratz in the first-filed case (Case No. 14-cv-06414-GHK-PJW) (Dkt. No. 1) in the following form: "¶" or : "¶¶."

[3]    References herein to the "Defendants' Motion" shall appear in the following form: "Defs. Mem. at __."

[4]    The "Demand Directors" are Kriegsman, Caloz, Selter, Ignarro, Rubinfeld, Wennekamp, and non-defendant Max Link ("Link"). Link was a member of CytRx's Board of Directors (the "Board") when the Action was initiated, but is not a "Defendant" for purposes of this Opposition because, per a Notice of Death filed pursuant to Fed. R. Civ. P. 25(a) (Dkt. No. 23), he "recently passed away." *See* Defs. Mem. at 1 n.2.  Nonetheless, Link was a director of CytRx when the Action was initiated and is still relevant to Defendants' Motion for purposes of assessing demand futility.

disclosed to stockholders) was simple.  First, the Dream Team would post and publish misleading articles and comments on investor websites (such as *SeekingAlpha.com*), touting the supposed strength of CytRx and its products.  At no time did these "articles" disclose that CytRx (under Defendants' direction and on their watch) paid for the promotion.  Defendants coordinated CytRx's U.S. Securities and Exchange Commission ("SEC") disclosures with these Dream Team "articles" touting the Company's future prospects.  Next, when the share price was high enough, the Defendants caused CytRx to conduct a large secondary offering (per the "Registration Statement" filed in December 2012) of Company stock at an artificially inflated price.

The Defendants' illicit scheme initially worked.  At least thirteen (13) articles touting CytRx were published by Dream Team between November 2013 and March 2014.[5]  Defendants timed their stock promotion scheme to occur just prior to the completion of the secondary offering of stock on January 31, 2014, wherein CytRx sold 11.5 million shares of common stock at a price of $6.50 per share.  The initial Registration Statement (which publicly disclosed the secondary offering) was filed by Defendants with the SEC on December 6, 2012.

Worse still, at the same time that this illegal scheme to pump up CytRx's stock price was perpetrated, certain Defendants took affirmative, self-dealing steps to enrich themselves at CytRx's expense.  On December 9, 2013, CytRx's four-member Compensation Committee (consisting of defendants Selter, Rubinfeld and Wennekamp, and deceased Board member Link) granted options to purchase 180,000 shares of CytRx stock to each non-employee director (*i.e.*, to themselves, plus defendant Ignarro).  These grants were set to vest immediately at a strike price set by the next day's closing stock price.  Then, at 8 a.m. on December 11, 2013 (the day

_____

[5]    Although Plaintiffs' respective complaints allege that the first misleading article was published in November 2013, according to the Consolidated Complaint for Violation of the Federal Securities Law filed on October 1, 2014 in the related securities fraud class action pending in this Court captioned *In re CytRx Corp. Sec. Litig.,* Docket No. 2:14-CV-10956-GHK (PJWx) (the "Securities Action"), the first of these articles was actually published in September 2013. *See* Decl. of Allen L. Lanstra (Dkt. 27) at Ex. 4, ¶¶105-108.

1   after the strike price was set), Defendants issued a press release announcing

2   significant "positive results" for CytRx's phase 2b clinical trial of its major sarcoma

3   drug, aldoxorubicin.  CytRx's stock price shot up ***more than 127%*** on this news.  In

4   just one day, the non-employee directors' stock options were already "in the money"

5   to the tune of over $3 million, all due to "spring-loading," *i.e.*, timing a very positive

6   news release until after the stock option grant had vested.[6]

7          Six directors served on the Board when the Action was initiated.  Thus,

8   Defendants' Motion must be denied if the Court has "reason to doubt" that at least

9   three Demand Directors could have properly considered a demand.  Plaintiffs easily

10   satisfy the "reasonable doubt" standard as all six Demand Directors are either

11   interested in a demand and/or lack independence, and their conduct is not a valid

12   exercise of business judgment.  Accordingly, for the reasons discussed herein,

13   Plaintiffs respectfully request that Defendants' Motion be denied in its entirety.

14   **II.   FACTUAL BACKGROUND**

15          In the interests of brevity, Plaintiffs respectfully refer this Court to the Factual

16   Background section of Plaintiffs' Memorandum of Law in Opposition to Nominal

17   Defendant's Motion to Dismiss Complaints Pursuant to Rules 12(b)(3) and 23.1, or, in

18   the Alternative, Motion to Stay filed concurrently herewith for a full recitation of the

19   factual background of the Action.

20

21

22

23

---

24   [6]      The insidious practice of "spring-loading" stock options involves making
25   market-value options grants at a time when insiders possess, but the corporation has
     not yet released, favorable, material non-public information that will likely increase
26   the stock price when disclosed.  *See, e.g., In re Tyson Foods, Inc.*, 919 A.2d 563, 576
     (Del. Ch. 2007) ("*Tyson Foods I*").  These actions violate the Demand Directors'
27   duties of loyalty and good faith, and demand is independently excused on this basis
     alone. *Id.* at 593 ("a director who intentionally uses inside knowledge not available to
28   shareholders" by awarding spring-loaded options "cannot, in my opinion, be said to be
     acting loyally and in good faith as a fiduciary.").

## III.   ARGUMENT

### A.   Plaintiffs Adequately Allege That Pre-Suit Demand Was Futile

#### 1.   Applicable Legal Standards Governing Demand Futility

The parties agree that because CytRx is a Delaware corporation, Delaware law guides the instant demand futility analysis. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108-09, 111 S. Ct. 1711, 1723, 114 L. Ed. 2d 152 (1991). Under Delaware law, pre-suit demand on the Board need not be made or alleged if the facts pled show that such a demand would have been futile. *Aronson v. Lewis,* 473 A.2d 805, 807 (Del. 1984), *overruled in part on other grounds, Brehm v. Eisner,* 746 A.2d 244 (Del. 2000). Pre-suit demand is excused if there is reason to doubt that: (i) a majority of a board's directors are independent or interested; or (ii) the challenged acts are a valid exercise of business judgment. *Id.* at 812. To implicate the *Aronson* test, a plaintiff must challenge a board decision where its members exercised business judgment. *Id.*

Where a complaint does not challenge a specific action or decision of the board, demand is excused where the complaint raises a reasonable doubt that a majority of the directors are disinterested or independent. *Rales v. Blasband,* 634 A.2d 927, 930 (Del. 1993).[7] Under the *Rales* test:

> [A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

---

[7] Both the *Aronson* and *Rales* tests simply ask whether "the directors are incapable of making an impartial decision regarding such litigation." *Rales,* 634 A.2d at 932. Thus, as the Delaware Chancery Court has noted, the *Aronson* and *Rales* tests are merely "complementary versions of the same inquiry." *In re China Agritech, Inc. S'holder Derivative Litig.,* C.A. No. 7163-VCL, 2013 WL 2181514, at *16 (Del. Ch. May 21, 2013).

1   *Id.* at 934.

2          This reasonable doubt standard "is sufficiently flexible and workable to provide

3   the stockholder with 'the keys to the courthouse' in an appropriate case where [as

4   here], the claim is not based on mere suspicions or stated solely in conclusory terms."

5   *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996). "Reasonable doubt" as applied

6   by Delaware courts can mean a "reason to doubt" that a board is capable of making an

7   independent or disinterested decision.   *Id.*   In determining the sufficiency of a

8   pleading under Rule 23.1, the Court must accept as true all particularized facts alleged

9   in the Complaint, and draw all reasonable factual inferences in favor of Plaintiffs.

10  *Gatz v. Ponsoldt,* 925 A.2d 1265, 1274-75 (Del. 2007); *Ryan v. Gifford,* 918 A.2d

11  341, 357 (Del. Ch. 2007).  Plaintiffs only need to allege with particularity facts that

12  would give a reasonable shareholder reason to doubt the Board's ability to consider

13  disinterestedly a demand.[8]  This is particularly appropriate in derivative suits, because

14  plaintiffs typically have not had the benefit of discovery.  *Rales,* 634 A.2d at 934

15  (requiring a reasonable probability of success on the merits would be "an extremely

16  onerous burden to meet at the pleading stage without the benefit of discovery").

17         A plaintiff may properly raise reasonable doubt regarding the disinterestedness

18  of directors by demonstrating they are subject to a "substantial likelihood of liability."

19  *Ryan*, 918 A.2d at 355.  As the Delaware Chancery Court explained in *Ryan,* directors

20  who are sued "have a disabling interest for pre-suit demand purposes when 'the

21  potential for liability is not a mere threat but instead may rise to a substantial

22  likelihood.'"  *Id.* (quoting *In re Baxter Int'l, Inc. S'holders Litig.,* 654 A.2d 1268,

23  1269 (Del. Ch. 1995)).

24

25

---

26  [8]       *See Grobow v. Perot,* 539 A.2d 180, 186-87 (Del. 1988) *overruled on other
    grounds by Brehm*, 746 A.2d at 244 (endorsing the reasonable doubt standard);

27  *Grimes,* 673 A.2d at 1217 n.17 ("the concept of reasonable doubt is akin to the
    concept that the stockholder has a 'reasonable belief' that the board lacks

28  independence or that the transaction was not protected by the business judgment
    rule").

When this Action was initiated, the Board was comprised of the six Demand Directors. Thus, Plaintiffs need only raise a reason to doubt the disinterestedness or independence of three Demand Directors. *See, e.g., Beneville v. York,* 769 A.2d 80, 85-86 (Del. Ch. 2000). Plaintiffs easily satisfy this standard by pleading particularized facts creating a reasonable doubt that any of the Demand Directors could have responded disinterestedly or independently to a demand and that the Demand Directors' actions were not a valid exercise of business judgment. Five of the six Demand Directors received spring-loaded option grants, and four Demand Directors – Link, Selter, Rubinfeld and Wennekamp – served on the Compensation Committee and themselves administered those awards. Moreover, each Demand Director knew about and approved the Dream Team contract and then caused false and misleading Company filings to be filed with the SEC, which failed to disclose the Dream Team relationship. Thus, for the reasons discussed herein, demand is excused.

**2.   Plaintiffs Sufficiently Raise a Reasonable Doubt That a Majority of the Demand Directors Lack Disinterest and/or Independence**

**a.   Demand Is Excused Because a Majority of the Demand Directors Received Spring-Loaded Stock Options**

Link, Selter, Rubinfeld, Wennekamp and Ignarro (a majority of the Demand Directors) each received spring-loaded stock option grants challenged in this Action, which independently excuses pre-suit demand. ¶¶39-44. The practice of spring-loading involves making market-value options grants when insiders possess, but the corporation has not yet released, favorable, material non-public information that will likely increase the stock price when disclosed. *See, e.g., Tyson Foods*, 919 A.2d at 576; *Weiss v. Swanson,* 948 A.2d 433, 439 (Del. 2008) ("when the quarterly earnings release contained material information expected to drive up the market price of Linear's shares, the Demand Directors allegedly 'spring-loaded' the options, granting them just prior to the quarterly earnings release."). Here, this is precisely what occurred with respect to the December 9, 2013 stock option grants to five of the

six Demand Directors.  Because Link, Selter, Rubinfeld, Wennekamp and Ignarro each personally received direct, illicit financial benefits that were not shared with shareholders, they cannot "fairly evaluate the claims of the shareholder plaintiff[s]" without being influenced by the adverse personal consequences resulting from the decision, and are therefore directly "interested" in a demand.  *See Aronson*, 473 A.2d at 812; *see also Rales*, 634 A.2d at 936.

In the context of alleged stock option manipulation, federal courts (including this court) have consistently held that where directors are alleged to have "received [manipulated] grants, those directors will be considered interested."  *In re Zoran Corp. Derivative Litig.,* 511 F. Supp. 2d 986, 1003 (N.D. Cal. 2007); *In re MRV Commc'ns, Inc.,* No. CV 08-3800 GAF(RCX), 2010 WL 1891717, at *5 (C.D. Cal. May 10, 2010) (excusing demand where 5 of 7 directors were alleged to have received manipulated options and holding that "[t]hese allegations are sufficient to show a majority of directors were not disinterested at the time Plaintiffs filed the present lawsuit").[9]  Delaware courts have held the same.  *See Conrad v. Blank,* 940 A.2d 28, 38 (Del. Ch. 2007) (directors alleged to have received manipulated options "have a strong financial incentive to maintain the status quo by not authorizing any corrective action that would devalue their current holdings or cause them to disgorge improperly obtained profits," thereby creating "an unacceptable conflict that restricts them from evaluating the litigation independently."); *Weiss,* 948 A.2d at 448 ("demand will be excused because all five directors to consider demand received at least some of the challenged option grants and are not disinterested.").

In such circumstances, demand is regularly excused.  *See, e.g., Conrad,* 940 A.2d at 38; *Weiss*, 948 A.2d at 448; *Travis v. Middlestaedt,* No. CV06-2341LEW

---

[9]    *See also In re Maxim Integrated Prods., Inc., Derivative Litig.,* 574 F. Supp. 2d 1046, 1060 (N.D. Cal. 2008) (allegations that a majority of directors received backdated options "were sufficient to create a reasonable doubt as to the disinterestedness of these directors"); *In re Computer Sciences Corp. Derivative Litig.,* 244 F.R.D. 580, 591 (C.D. Cal. 2007) *aff'd sub nom. Laborers Int'l Union of N. Am. v. Bailey,* 310 F. App'x 128 (9th Cir. 2009) (plaintiffs raised reason to doubt disinterestedness of directors alleged to have "received the tainted options").

1   GGH, 2008 WL 755842 (E.D. Cal. Mar. 19, 2008) (same); *see also Cambridge Ret.*

2   *Sys. v. Bosnjak*, C.A. No. 9178-CB, 2014 WL 2930869, at *3 (Del. Ch. Jun. 26, 2014)

3   (excusing demand under first prong of *Aronson* where majority of directors were

4   personally interested in challenged equity awards they approved for themselves). The

5   logic and rationale in support of these decisions applies equally here.

6          Accordingly, because defendants Link, Selter, Rubinfeld, Wennekamp and

7   Ignarro each received spring-loaded stock option grants during the Relevant Period,

8   they are not disinterested for purposes of demand.  These four Demand Directors

9   constitute a majority of the Board and, thus, any demand is futile.

10                    **b.    Demand Is Excused Because the Compensation**
                            **Committee Members Face a Substantial**
11                          **Likelihood of Liability for Approving Spring-**
                            **Loaded Stock Options and Their Actions Were**
12                          **Not Protected By Business Judgment**

13         Putting aside that a majority of the Demand Directors were recipients of the

14   spring-loaded options and are therefore directly interested, the Compensation

15   Committee members (who also comprise a majority of the Board) face a substantial

16   likelihood of liability because they awarded those options, which also independently

17   excuses demand.   Accordingly, demand is futile as to defendants Link, Selter,

18   Rubinfeld and Wennekamp under both prongs of the *Aronson* test.

19         Under Delaware law, a plaintiff may raise reasonable doubt regarding the

20   disinterestedness of directors by demonstrating they are subject to a "substantial

21   likelihood of liability."   *Ryan,* 918 A.2d at 355.[10]   Directors who approve or

22   administer grants of manipulated stock options or other stock awards face "at the very

23   least a substantial likelihood of liability."  *Id.; see also Tyson Foods I,* 919 A.2d at

24   _____

25   [10]     To excuse demand based on alleged awards of manipulated stock options, a
     derivative plaintiff must merely allege facts sufficient to support the reasonable
26   inference at the pleading stage that the options were improperly issued.  *See, e.g.,*
     *Ryan,* 918 A.2d at 358; *Belova v. Sharp,* No. CV 07-299-MO, 2008 WL 700961, at *5
27   (D. Or. Mar. 13, 2008) (same); *Edmonds v. Getty,* 524 F. Supp. 2d 1267, 1276-77
     (W.D. Wash. 2007) (same).  Here, Plaintiffs have more than adequately alleged that
28   Defendants timed the stock option grants to vest immediately prior to the release of
     highly material, positive information.

- 8 -

592-93 (compensation committee members faced a substantial likelihood of liability based on allegations that they awarded "spring-loaded" options); *Edmonds,* 524 F. Supp. 2d at 1276-77 (compensation committee members who served during time frame when stock option grants were alleged to have been backdated were interested in a demand based on a substantial likelihood of liability); *Engel v. Sexton,* No. Civ.A. 06-10447, 2009 WL 361108, at *6 (E.D. La. Feb. 11, 2009) (same).

As Compensation Committee members, Link, Selter, Rubinfeld and Wennekamp approved the award of stock options to themselves and to defendant Ignarro with vesting prices set to December 10, 2013, the day before the disclosure of highly material, positive information about CytRx's main drug, aldoxorubicin. For pleading purposes, where Plaintiffs are entitled to the benefit of all reasonable inferences and Defendants are entitled to none, it is reasonable to infer that these grants were deliberately timed to ensure that CytRx's outside directors would have their stock options priced ***before*** this information was disseminated to the market so as to take advantage of the corresponding increase in CytRx's stock price (which was further bolstered by two "timely" Dream Team articles as alleged in the Complaint at ¶32). As the Delaware Chancery Court has held, "where I may reasonably infer that a board of directors later concealed the true nature of a grant of stock options, I may further conclude that those options were not granted consistent with a fiduciary's duty of utmost loyalty." *In re Tyson Foods, Inc.,* No. Civ.A. 1106-CC , 2007 WL 2351071, at *5 (Del. Ch. Aug. 15, 2007) ("*Tyson Foods II*"). Significantly and respectfully, the *Tyson Foods* spring-loading allegations, which were sufficient to excuse pre-suit demand, were not as strong as those advanced by Plaintiffs in this Action. In *Tyson Foods*, Chancellor Chandler reasonably inferred that spring-loading occurred where the defendants granted options at $13.33 per share on September 19, 2003, and ***four days later*** the corporation publicly announced that earnings would exceed expectations, propelling the share price to $14.25, a gain of approximately 9%. *Tyson Foods I*, 919 A.2d at 576. Here, by contrast, the time between the grant vesting and

1    the positive news announcement was only hours – less than a full day.  ¶6.  Moreover,

2    on the positive news, CytRx's stock price rose by ***127%***.  *Id.*

3        Not only does the approval of spring-loaded stock options raise a reasonable

4    doubt as to the disinterestedness of the four Compensation Committee members, but it

5    also falls outside the realm of protected business judgment.  Chancellor Chandler did

6    not mince words in condemning spring-loading: "The affairs of Delaware corporations

7    are managed by their board of directors, who owe to shareholders duties of

8    ***unremitting*** loyalty."  *Tyson Foods II,* 2007 WL 2351071, at *3 (emphasis in

9    original).  Chancellor Chandler went onto state:

10       Loyalty. Good faith. Independence. Candor.  These are words pregnant

11       with obligation.   The Supreme Court did not adorn them with half-

12       hearted adjectives. Directors should not take a seat at the board table

13       prepared to offer only conditional loyalty, tolerable good faith,

14       reasonable disinterest or formalistic candor.  It is against these standards,

15       and in this spirit, that the alleged actions of spring-loading or backdating

16       should be judged.

17   *Id.* at *4.  As such, it is unsurprising that Chancellor Chandler concluded that "spring-

18   loading would be beyond the bounds of business judgment." *Id.* at *5.  Thus, demand

19   was not required upon Link, Selter, Rubinfeld and Wennekamp, who constitute a

20   majority of the Board, and Defendants' Motion must be denied.  *See, e.g., Beneville,*

21   769 A.2d at 85-86.

22              c.    **Demand Is Excused Because the Demand**
                      **Directors' Adoption or Tacit Approval of an**
23                    **Illegal Business Strategy Is Not a Presumptively**
                      **Protected Business Judgment**
24

25       Even putting aside that demand is excused due to a majority of the Demand

26   Directors' awards and receipt of spring-loaded stock options, as discussed above, the

27   Demand Directors' approval of the illicit stock promotion scheme at CytRx likewise

28   was not a protected business judgment, which also independently excuses demand.

1   *See, e.g., In re Pfizer, Inc. S'holder Derivative Litig.,* 722 F. Supp. 2d 453, 459-60

2   (S.D.N.Y. 2010) (applying Delaware law).  Notably, §17(b) of the Securities Act of

3   1933 prohibits the publicizing of a security for payment unless the nature, amount,

4   and source of the compensation is disclosed.  An informed decision declining to

5   intervene in an ongoing violation of the law is not protected under the business

6   judgment rule.  *Id.*  Both law and logic support this rule.  *Metro Commc'n Corp. BVI*

7   *v. Advanced Mobilecomm Techs., Inc.,* 854 A.2d 121, 131 (Del. Ch. 2004) ("Under

8   Delaware law, a fiduciary may not choose to manage an entity in an illegal fashion,

9   even if the fiduciary believes that the illegal activity will result in profits for the

10  entity.").[11]  Directors do not have the discretion to act beyond their lawful powers and

11  their conscious decision to do so is not a "valid exercise of business judgment"

12  because it is not a business judgment at all.  *Aronson,* 473 A.2d at 814; *see also Ryan,*

13  918 A.2d at 354.

14      As the "ultimate decision-making body" of the Company, the Board

15  affirmatively adopted, implemented, and condoned a business strategy which had the

16  effect of deliberately violating the law regarding disclosure of material information to

17  shareholders.  Further, Defendants allowed the Dream Team to conduct a stock

18  promotion campaign involving the publishing of false and misleading articles

19  regarding CytRx, which they secretly caused CytRx to pay for.  As discussed herein,

20  breaking the law is not, however, a legally protected business decision and such

21  conduct cannot be considered a valid exercise of business judgment, which excuses

22  demand.  *Pereira v. Cogan,* 294 B.R. 449, 531 n.76 (S.D.N.Y. 2003) *vacated and*

23  *remanded sub nom. Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005) ("In any case, the

---

24  [11]     *See also Cal. Pub. Emps.' Ret. Sys. v. Coulter,* No. Civ.A. 19191, 2002 WL

25  31888343, at *10 (Del. Ch. Dec. 18, 2002) (accepting *ultra vires* argument excusing
    demand because "the business judgment rule may not be invoked to shelter

26  unauthorized actions of a board of directors."); *Kahn v. Roberts,* 679 A.2d 460, 465
    (Del. 1996) ("the business judgment rule normally protects all lawful actions of the

27  board."); *Int'l Ins. Co. v. Johns,* 874 F.2d 1447, 1461 (11th Cir. 1989) (the "court will
    substitute its judgment for that of the board" upon a "showing of abuse of discretion,

28  fraud, bad faith, or illegality."); *Miller v. AT&T Co.,* 507 F.2d 759, 762 (3d Cir. 1974)
    (business judgment does not insulate directors from liability for statutory violations).

business judgment rule would not protect the illegal acts complained of."). Accordingly, because demand is excused, Defendants' Motion must be denied.

### d. Demand Is Excused Because the Entire Board Faces a Substantial Likelihood of Liability for Causing CytRx To Disseminate False and Misleading Information

Every Demand Director (and in particular the Audit Committee members)[12] is interested for purposes of demand because they each face a substantial likelihood of liability for their conduct in disseminating false and misleading information to CytRx's shareholders during the Relevant Period.  ¶¶28-29, 59.  As alleged in the Complaint, CytRx's Audit Committee Charter obligated each of the Audit Committee Defendants to, *inter alia,* review and approve earnings press releases, as well as the Company's financial statements (including the quarterly and annual reports filed on Forms 10-Q and 10-K, respectively) and internal control structure and procedures for financial reporting. ¶28.  The Audit Committee Defendants served as members of the Audit Committee when the Defendants caused CytRx to engage the Dream Team and subsequently issue SEC filings which failed to disclose the Dream Team's stock promotion scheme.   Further, every Demand Director signed the Registration Statement on Form S-3 which failed to disclose the Dream Team stock promotion scheme.  *See* Decl. of Allen L. Lanstra (Dkt. 27) at Ex. 4, ¶¶30-32, 43-48.

Under Delaware law, whenever directors of a corporation communicate with shareholders, the "shareholders are entitled to honest communication from directors, given with complete candor and in good faith." *In re InfoUSA, Inc. S'holders Litig.,* 953 A.2d 963, 990 (Del. Ch. 2007).  "Communications that depart from this expectation, particularly where it can be shown that the directors involved issued their communication with the knowledge that it was deceptive or incomplete, violate the fiduciary duties that protect shareholders. Such violations are sufficient to subject

---

[12]   Collectively, defendants Link, Selter, and Winnekamp served as members of the Audit Committee during the Relevant Period and are referred to herein as the "Audit Committee Defendants."

- 12 -

1    directors to a derivative claim." *Id.*  Here, Defendants approved the Dream Team

2    scheme, took advantage of the benefits therefrom to conduct the secondary offering,

3    and yet failed to disclose this knowledge to the public.  Directors who knowingly

4    issue false and misleading statements to shareholders "may be considered to be

5    interested for purposes of demand." *Id.* at 991; *see also In re Veeco Instruments, Inc.*

6    *Sec. Litig.,* 434 F. Supp. 2d 267, 276 (S.D.N.Y. 2006) (demand not required on audit

7    committee members under Delaware law because they each faced substantial

8    likelihood of liability based on allegations that they failed to perform duties imposed

9    on them by their charter, including failing to oversee internal controls and compliance

10   with disclosure laws and regulations).

11          This Court can and should reasonably infer that all the Demand Directors (and

12   the Audit Committee Defendants, in particular) knew or should have known that the

13   Dream Team stock promotion scheme was material information, which CytRx's

14   stockholders had a right to know, particularly when they were conducting a stock

15   offering.  The Demand Directors' knowing issuance and approval of false and

16   misleading statements to shareholders can and should be reasonably inferred in this

17   Action because of the obvious significance of the Dream Team stock promotion

18   scheme and the enormous negative effect the public disclosure of the Dream Team

19   scheme had on CytRx's stock price.  *See, e.g., Pfeiffer v. Toll,* 989 A.2d 683, 690

20   (Del. Ch. 2010) (reasonably inferring that directors were aware of information

21   negatively impacting company's business prospects before that information reached

22   the market); *abrogated on other grounds* by *Kahn v. Kolberg Kravis Roberts & Co.,*

23   *L.P.,* 23 A.3d 831 (Del. 2011).  As the Delaware Chancery Court confirmed in *Ryan,*

24   918 A.2d at 345, an audit committee's role in connection with corporate

25   communications is no small matter, even putting aside the traditional Delaware

26   fiduciary duties of loyalty and good faith which obligate directors to issue complete

27   and truthful disclosures to shareholders.

28

In *Ryan,* Chancellor Chandler discussed how the filing and dissemination of false and misleading statements "runs afoul of many state and federal common and statutory laws that prohibit dissemination of false and misleading information." *Id.* The *Ryan* Court specifically noted that the members of the audit committee were directly responsible for, *inter alia,* reviewing and approving false financial statements resulting from the "mischaracterization" of stock option grants, in advance of their issuance. *Id.* at 356 n.38. This reasoning is just as applicable to the entire Board in this case given that each reviewed and signed the Registration Statement. As such, Chancellor Chandler opined that the audit committee members subjected themselves to **potential criminal liability** for, *inter alia,* securities fraud, mail fraud, and wire fraud, and expressed no doubt that they also faced a substantial likelihood of liability for breaching their fiduciary duties under Delaware law. *Id.*

Accordingly, demand was not required here on any Board member (and the Audit Committee Defendants especially) because each caused the Company to issue false and misleading statements regarding the stock offering, the Dream Team stock promotion scheme, and these events' effect on CytRx's financial condition and stock price. As such, demand is futile for all six Demand Directors.

### e. Defendants Kriegsman and Rubinfeld Are Not Independent

Defendant Kriegsman's principal occupation is his employment as CytRx's President and CEO, pursuant to which he received and receives substantial monetary compensation. ¶49. The Company's own disclosures admit that defendant Kriegsman is not independent. *Id*. Similarly, defendant Rubinfeld also serves CytRx in a senior management position as Chief Scientific Advisor. ¶50. Defendant Rubinfeld received compensation for his services with 80,000 stock options, a substantial financial benefit not received by other stockholders or other Board members. *Id*.

Under Delaware law, the issue of a director's independence "turns on whether the director is, for any substantial reason, incapable of making a decision with only the

best interests of the corporation in mind." *In re Oracle Corp. Derivative Litig.,* 824 A.2d 917, 920 (Del. Ch. 2004).   The independence test ultimately focuses on a director's "impartiality and objectivity." *Id.*  Thus, Delaware courts have consistently held that employee-directors, such as defendants Kriegsman and Rubinfeld, cannot be considered independent of directors who are their employers and/or management superiors. *Mizel v. Connelly*, No. Civ.A. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999); *see also Rales,* 634 A.2d at 937 ("there is a reasonable doubt that [an employee-director] can be expected to act independently considering his substantial financial stake in maintaining his current offices"); *In re Cooper Cos., Inc. S'holders Derivative Litig.,* No. 12584, 2000 WL 1664167, at *6-*7 (Del. Ch. Oct. 31, 2000) (directors who also served as Chief Financial Officer, Treasurer and Vice President/General Counsel of corporation could not respond impartially to a demand); *Tyson Foods I,* 919 A.2d at 584 (service as CEO was enough to create a reasonable doubt as to his independence).[13]

As such, under Delaware law, two of the six Demand Directors are not independent for demand purposes.

### B.   Plaintiffs Sufficiently Plead All Causes of Action Against Defendants

#### 1.   Pleading Standards on a Motion to Dismiss

"The primary objective of the legal system is to obtain a determination on the merits rather than a dismissal based on pleadings." *Singh v. Ilchert*, 784 F. Supp. 759, 762 (N.D. Cal. 1992).   Consistent with this maxim, to survive a motion to dismiss, a plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).   "A claim has facial

---

[13]   *Accord In re Adolor Corp. Derivative Litig.,* No. 04-3649, 2009 WL 1325738, at *8 (E.D. Pa. May 12, 2009) (applying Delaware law) ("Plaintiffs argue that any demand on Peacock would be futile as a result of his position as the President and Chief Executive Officer of Adolor.  We agree."); *McCabe v. Foley,* 424 F. Supp. 2d 1315, 1320 (M.D. Fla. 2006) (applying Delaware law) (inside directors were considered to lack sufficient independence for purposes of demand); *In re Cray, Inc. Derivative Litig.,* 431 F. Supp. 2d 1114, 1127-28 (W.D. Wash. 2006) (same).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).  Additionally, courts must also draw "all reasonable inferences in the plaintiffs' favor." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  "Even if the face of the pleadings indicates that the chance of recovery is remote, the Court must allow plaintiff to develop his or her case at this stage of the proceedings." *Singh*, 784 F. Supp. at 762 (citing *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)).

## 2.    Plaintiffs' Claims Do Not Sound in Fraud

Despite Defendants' protestations, Plaintiffs' complaint does not "sound in fraud" and is not subject to Fed. R. Civ. P. 9(b).  Defs. Mem. at 20-21.  However, even if the Court were to find that Plaintiffs' Complaint sounds in fraud, a complaint for breaches of the duties of loyalty and good faith must merely identify the disclosure through which corporate fiduciaries misinformed stockholders, outline the allegations that support the requested remedy, and plead causation and quantifiable damages. *See O'Reilly v. Transworld Health Care, Inc.,* 745 A.2d 902 (Del. Ch. 1999).  These same allegations also satisfy Fed. R. Civ. P. 9(b)'s requirement that a complaint alleging "fraud or mistake ... be stated with particularly." *In re TASER Int'l, Inc. S'holder Derivative Litig.*, No. CV-05-123-PHX-SRB, 2006 WL 687033, *13 (D. Ariz. Mar. 17, 2006).  As discussed below, because Plaintiffs' allegations regarding CytRx's stock promotion scheme with Dream Team and Defendants' spring-loading of stock

1    options more than satisfy Delaware's pleading standards, the Complaint also satisfies

2    the requirements of Fed. R. Civ. P. 9(b). *See, e.g.*, *TASER*, 2006 WL 687033, at *15.

### 3.    Plaintiffs Adequately Allege Claims for Breach of Fiduciary Duty

Plaintiffs' First and Second Claims are for breaches of fiduciary duties. ¶¶66-73.  To adequately allege a breach of fiduciary duty claim under Delaware law, a plaintiff must plead that: (i) a fiduciary duty exists; and (ii) a fiduciary breached that duty. *Heller v. Kiernan,* No. Civ.A. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd,* 806 A.2d 164 (Del. 2002).  The Delaware Supreme Court has repeatedly stated that Delaware officers and directors owe the duties of care, good faith, and loyalty to their corporations and the stockholders they serve. *See, e.g., Malone v. Brincat,* 722 A.2d 5, 10 (Del. 1998); *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1156 (Del. 1995).  Breach of fiduciary duty claims may be averred generally, and there is no requirement that a plaintiff allege "*scienter*." *Grobow v. Perot,* 526 A.2d 914, 921 (Del. Ch. 1987) *aff'd*, 539 A.2d 180 (Del. 1988).[14]  To properly exercise his or her responsibilities, a Delaware officer or director must independently satisfy all three of those duties. *Id.*

Here, Plaintiffs allege that Defendants breached their fiduciary duties by: (i) repeatedly disseminating false and misleading information;[15] (ii) failing to maintain adequate internal controls; (iii) entering into an illicit, undisclosed contract with Dream Team for the promotion of CytRx's stock; and (iv) issuing stock options to

---

[14]    This is true even where a breach of fiduciary duty claim rests upon allegations that a defendant "knew something." *Weiss,* 948 A.2d at 449.

[15]    "Whenever directors communicate publicly or directly with shareholders about the corporation's affairs . . . directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty." *Malone,* 722 A.2d at 10.  It follows that "the *sine qua non* of directors' fiduciary duty to shareholders is honesty." *Id.*  When directors are "deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty." *Id.* at 14. In fact, a fiduciary may be held liable for making a "material misdisclosure" or if he "authorizes without fault or knowledge a misleading disclosure, later comes into knowledge of the misleading nature of the previous communication, and knowingly and in bad faith (in other words, 'dishonestly') fails to correct the misleading impression created by the earlier communication." *Metro,* 854 A.2d at 159.

themselves and arranging for them to immediately be "in the money" due to spring-loading highly material news regarding the Company's chief product, aldoxorubicin, until the morning after the Defendants' stock options vested.  ¶¶30-45.  Plaintiffs identified the public filings filed in connection with CytRx's stock offering wherein Defendants failed to inform CytRx's shareholders of the Dream Team stock promotion scheme (¶33) or of Defendants' spring-loading of stock options for the "outside" directors' own personal, financial benefit (¶¶39-44) and how these actions breached the fiduciary duties owed by the Defendants to CytRx.  ¶¶45, 66-73.  Moreover, Plaintiffs alleged that the Dream Team stock promotion scheme was kept secret and not to be found in *any* of CytRx's public filings until after it was publicized by a person with firsthand information.  ¶33.  Finally, the Complaint pleads the requisite causation and damages.  ¶¶9, 45, 69, 73, 76, 83, 88, 92-93.  By approving spring-loaded grants to CytRx directors, Defendants diverted millions of dollars in corporate assets to themselves.  ¶43.  As a result of their actions, Defendants subjected CytRx to, *inter alia*, substantial investigative costs, investigation by regulators, including the SEC, losses associated with manipulated stock options, and other damages.  Plaintiffs have sufficiently pled claims for breaches of fiduciary duties.

### 4.    Plaintiffs Adequately Allege Unjust Enrichment

Plaintiffs' Third and Sixth Claims are for unjust enrichment.  ¶¶74-76; 86-89. Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *In re HealthSouth Corp. S'holders Litig.,* 845 A.2d 1096, 1105 (Del. Ch. 2003), *aff'd* 2004 Del. LEXIS 175 (Del. Apr. 14, 2004).  As the *HealthSouth* court stated:

> To obtain restitution, the Plaintiffs were required to show that the Defendants were unjustly enriched, that the Defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit. Restitution is permitted even when the Defendant retaining the

benefit is not a wrongdoer. Restitution serves to deprive the Defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and even though the Plaintiff may have suffered no demonstrable losses.

*Id.; see also Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377, 394 (Del. Ch. 1999) ("Having pleaded sufficiently the allegations [of] breach of fiduciary duty . . . it is axiomatic that Plaintiffs have likewise pleaded sufficiently the allegations that Defendants were enriched by their actions [and it is therefore] likely they will also be able to prove that neither [defendant] can retain any benefit resulting from the disputed transaction.").

Plaintiffs have alleged that the Defendants unjustly received compensation as a result of awarding spring-loaded stock options to themselves. ¶¶40, 43-44, 53, 62, 74-76, 86-89. Plaintiffs repeatedly allege that CytRx was damaged as a result of Defendants' breaches of fiduciary duties. ¶¶9, 45, 69, 73, 76, 83, 88, 92-93. Because restitution is permitted under Delaware law even when (unlike here) a defendant retaining the benefit is not a wrongdoer, restitution is an appropriate remedy regardless of Defendants' roles in the two schemes. *See, e.g., Ryan,* 918 A.2d at 355. Thus, Plaintiffs have adequately pled a claim for unjust enrichment.

### 5. Plaintiffs Adequately Allege Gross Mismanagement and Abuse of Control

Plaintiffs' Fourth and Fifth Claims are for gross mismanagement and abuse of control. ¶¶77-85. Abuse of control occurs when defendants dominate and control a company's business affairs, and as a result of their wrongful conduct, the company is injured. *Belova*, 2008 WL 700961, at *9 (derivative claim for abuse of control under Delaware law adequately alleged). Likewise, Plaintiffs' allegations support the claim of gross mismanagement. In the corporate context, gross negligence means "reckless indifference to or a deliberate disregard of the stockholders" or actions which are "without the bounds of reason." *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963,

970 (Del. 2000); *Allaun v. Consol. Oil Co.*, 16 Del. Ch. 318, 325, 147 A. 257, 261 (Del. Ch. 1929) (same); *Brehm*, 746 A.2d at 259 (liability may attach for "gross negligence").

All of the allegations discussed above in support of Plaintiffs' fiduciary duty claims additionally support the claims for abuse of control and gross mismanagement and Plaintiffs' allegations are sufficient at this stage of the proceedings.

### 6. Plaintiffs' Second Claim Is Not a "Caremark" Claim for Failure to Monitor

In a transparent attempt to misguide this Court's analysis, Defendants incorrectly assert that this Action is a so-called *"Caremark"* or "oversight" case. Defs. Mem. at 23. As a preliminary point on this issue, a *Caremark* "oversight" case requires two "necessary conditions predicate": (1) that "directors utterly failed to implement any reporting or information system of controls," or (2) that directors, "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring attention." *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del. Ch. 1996).

In *Caremark,* the complaint charged the defendant directors with breach of their duty of care in connection with the operation of the corporation's business. *Caremark,* 698 A.2d at 967. Specifically, the plaintiff alleged that the directors negligently failed to implement systems that would allow them to monitor the corporation's operations and thus ***failed to become aware of*** arguably unlawful acts committed by relatively far-flung, low level employees. *Id.* at 967. Thus, the *Caremark* plaintiffs' claim was that the directors should have known of subordinate employees' misbehavior, and, had they known of it, they would have been duty-bound to take affirmative steps to make the corporation compliant with applicable laws, and to attempt to mitigate the corporate losses, or potential losses. *Id.* at 969. Critically, the *Caremark* court's review of directors' liability was predicated upon ignorance of

liability-creating activities where there were no facts indicating the directors conscientiously permitted wrongdoing to occur. *Id.* at 971.

Thus, Plaintiffs are not asserting a *Caremark* "failure to monitor" or "oversight" case. Plaintiffs do not claim and have never claimed that the Defendants are liable because they were blissfully ignorant of liability-creating activities of others. Rather, and for the reasons discussed above, Plaintiffs allege that all of the Demand Directors **knew or had reason to know** of serious issues related to the Dream Team stock promotion scheme, including that if it became public, it would (or likely would) cause a significant loss to the Company, and failed to accurately and fully disclose the this information to shareholders. *See, e.g., In re Abbott Labs. Derivative S'holders Litig.,* 325 F.3d 795, 809 (7th Cir. 2003)*; Pfizer,* 722 F. Supp. 2d at 458. Thus, the Demand Directors' liability is based on ***information the court may reasonably infer was known to them***.

Accordingly, Defendants' reliance on *Caremark* and its progeny is wholly misplaced. In the Action, Plaintiffs have clearly and succinctly alleged in the Complaint that Defendants had an affirmative "known duty to act" and they failed to do so. Further, the Complaint alleges *who* failed to engage in the corporate oversight: Defendants (¶¶16-25); *what* they did wrong: approved Dream Team scheme and spring-loaded stock options to themselves (¶¶30-44) and how CytRx and its shareholders were harmed, including significant declines in CytRx's stock price and market capitalization. ¶¶9, 45, 69, 73, 76, 83, 88, 92-93. Nothing more is required of Plaintiffs at this time to adequately plead a claim for breach of fiduciary duty based upon a failure of internal controls.

### 7.    Defendants' Reliance on CytRx's Exculpatory Provision Is Inappropriate at This Juncture and Inapplicable

Finally, Defendants' references to: (a) the exculpatory clause in CytRx's charter; and (b) 8 Del. C. §102(b)(7) ("§102(b)(7)") are merely red herrings. Defs. Mem. at 15-16. As an initial matter, Plaintiffs cannot be dismissed at the pleading

stage based on the "exculpatory provision" of CytRx's charter, because such a clause cannot even be considered at the pleading stage (or the summary judgment stage) under Delaware law, unless the sole conceivable basis of liability is a violation of the duty of care. *Emerald Partners v. Berlin,* 726 A.2d 1215, 1223 (Del. 1999) (use of exculpatory provisions to shield directors from personal liabilities presents an affirmative defense not amenable for pretrial disposition); *Alidina v. Internet.com Corp.,* No. Civ.A. 17235-NC, 2002 WL 31584292, at *8-9 (Del. Ch. Nov. 6, 2002). Accordingly, dismissal of a derivative action on §102(b)(7) grounds at the pleading stage is an extreme application of the rule and a strongly disfavored approach to resolving a pleading motion. *See Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford,* 554 F. Supp. 2d 538, 561 (D. Del. 2008); *In re Mervyn's Holdings, LLC v. Lubert-Adler Grp. IV, LLC,* 426 B.R. 488, 502 (Bankr. D. Del. 2010).

Where, as here, directors are alleged, *inter alia,* to have issued spring-loaded stock options and approved of an illicit stock promotion scheme, they cannot be shielded by §102(b)(7) at the pleading stage from liability arising from their alleged breach of their non-exculpated fiduciary duties to act loyally and in good faith. *See, e.g., Belova,* 2008 WL 700961, at *8. Likewise, the application of §102(b)(7) should be treated as an affirmative defense not suitable at the pleading stage rather than one subject to pre-trial disposition. *See Wolford,* 554 F. Supp. 2d at 561 (declining to consider §102(b)(7) at the pleading stage because "the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense."); *Mervyn's Holdings,* 426 B.R. at 502 (same). If there is any doubt regarding the application of what is normally a summary judgment stage or trial stage affirmative defense, then §102(b)(7) is not a proper basis for dismissal.

Further, Defendants seeking the protections afforded by an exculpatory provision pursuant to §102(b)(7) bear the heavy burden of proving their actions were the product of good faith. *Emerald Partners,* 726 A.2d at 1224. Defendants have not

1   made that showing. Therefore, dismissal under §102(b)(7) would be improper,

2   because Plaintiffs have alleged facts clearly implicating the duties of good faith and

3   loyalty, and Defendants have failed to demonstrate that they acted in good faith. *See,*

4   *e.g., Ryan v. Lyondell Chem. Co.,* C.A. No. 3176-VCN, 2008 WL 4174038, at *3

5   (Del. Ch. Aug. 29, 2008) ("a conscious disregard of one's responsibilities" is

6   "'properly treated as a non-exculpable, non-indemnifiable violation of the fiduciary

7   duty to act in good faith"'); *Pfizer,* 722 F. Supp. 2d at 460 (same).

8        Plaintiffs have adequately alleged that the Defendants' breaches are not

9   violations of the duty of care alone, but that their conduct here was not in "good faith"

10  under §l02(b)(7). Accordingly, the Defendants may not rely on CytRx's "exculpatory

11  provision" at the pleadings stage.[16]

12  **IV.   CONCLUSION**

13       Accordingly, for the following reasons, Plaintiffs respectfully request that the

14  Court deny Defendants' Motion in its entirety.

15  DATED:  November 6, 2014          Respectfully submitted,

16                                    KATHLEEN A. HERKENHOFF (168562)

17

18                                    ___s/ KATHLEEN A. HERKENHOFF___
                                      KATHLEEN A. HERKENHOFF

19
                                      12707 High Bluff Drive, Suite 200
20                                    San Diego, CA 92130
                                      Telephone:  (858) 794-1441
21                                    Facsimile:  (858) 794-1450
                                      kah@weiserlawfirm.com
22

23  _____
    [16]    Similarly, the business judgment rule provides no protection where the conduct
24  at issue involves the issuance of false statements in SEC filings. Such behavior is an
    egregious breach of Defendants' fiduciary duties. *See Malone,* 722 A.2d at 10 ("It
25  follows a *fortiori* that when directors communicate publicly or directly with
    shareholders about corporate matters, the *sin qua non* of directors' fiduciary duty to
26  shareholders is honesty."); *Shamrock Holdings of Cal., Inc. v. Iger,* No. 1330-N, 2005
    WL 1377490, at *4 (Del. Ch. June 6, 2005) ("Even in instances where directors are
27  not seeking shareholder action, they are still obligated to communicate honestly with
    shareholders."); *Emerald Partners,* 726 A.2d at 1223 (directors are obligated "to
28  provide a balanced, truthful account of all matters disclosed in ... communications
    with shareholders.").

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
(*pro hac vice* pending)
JEFFREY J. CIARLANTO
(*pro hac vice* pending)
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jjc@weiserlawfirm.com

Counsel for Jared Pankratz and Jack Taylor
and Co-Lead Counsel for Plaintiffs

THE SHUMAN LAW FIRM
KIP B. SHUMAN
RUSTY E. GLENN
885 Arapahoe Avenue
Boulder, CO 80302
Telephone: (303)861-3003
Facsimile: (303)484-4886
rusty@shumanlawfirm.com
kip@shumanlawfirm.com

Counsel for Jack Taylor and Co-Lead Counsel
for Plaintiffs

THE ROSSBACHER FIRM
HENRY H. ROSSBACHER, Esq. (069269)
JEFFREY ALAN GOLDENBERG, Esq.
(168990 )
21550 Oxnard Street, Suite 300
Woodland Hills, CA 91367
Telephone: (818) 274-3010
Facsimile: (818) 224-6600
h.rossbacher@rossbacherlaw.com
j.goldenberg@rossbacherlaw.com

Local Counsel for Plaintiffs

- 24 -

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 6, 2014, I authorized the electronic filing of

3

the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses denoted on the attached Electronic

5

Mail Notice List.

6

I certify under penalty of perjury under the laws of the United States of America

7

that the foregoing is true and correct.  Executed on November 6, 2014.

8

9

_/S/ KATHLEEN A. HERKENHOFF_
KATHLEEN A. HERKENHOFF

10

THE WEISER LAW FIRM, P.C.

11

12707 High Bluff Drive, Suite 200
San Diego, CA 92130

12

Telephone: 858/794-1441
Facsimile: 858/794-1450

13

Email: kah@weiserlawfirm.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mailing Information for a Case 2:14-cv-06414-GHK-PJW Jared Pankratz v. Steven A. Kriegsman et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey J Ciarlanto**
  jjc@weiserlawfirm.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com,jmf@weiserlawfirm.com,jjc@weiserlawfirm.com,bds@weiserlawfirm.com,hf@weiserlawfirm.com

- **Peter Bradley Morrison**
  peter.morrison@skadden.com,alejandra.lopez@skadden.com

- **Thomas Jerome Nolan**
  tnolan@skadden.com,LAO.LACWORDPROCESSING@skadden.com,peter.morrison@skadden.com,caroline.vanness@skadden.com,allen.lanstra@skadden.com,thomas.haroldson@skadden.com,al_chua@skadden.com,ken.boyd@skadden.com,rebecca.isomoto@skadden.com

- **Henry H Rossbacher**
  h.rossbacher@rossbacherlaw.com

- **Kip Brian Shuman**
  kip@shumanlawfirm.com

- **Brett D Stecker**
  bds@weiserlawfirm.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)