1  THOMAS J. NOLAN (SBN 66992)
   Thomas.Nolan@skadden.com
2  PETER B. MORRISON (SBN 230148)
   Peter.Morrison@skadden.com
3  ALLEN L. LANSTRA (SBN 251510)
   Allen.Lanstra@skadden.com
4  SKADDEN, ARPS, SLATE, MEAGHER
      & FLOM LLP
5  300 South Grand Avenue, Suite 3400
   Los Angeles, CA 90071-3144
6  Telephone:   (213) 687-5000
   Facsimile:   (213) 687-5600
7
8  CLIFFORD H. PEARSON (SBN 108523)        GEORGE S. TREVOR (SBN 127875)
   cpearson@pswlaw.com                     gtrevor@pswlaw.com
   ALEXANDER SAFYAN (SBN 277856)           PEARSON, SIMON & WARSHAW LLP
9  asafyan@pswlaw.com                      44 Montgomery Street, Suite 2450
   PEARSON, SIMON & WARSHAW LLP            San Francisco, CA 94104
10 15165 Ventura Boulevard, Suite 400      Telephone:   (415) 433-9000
   Sherman Oaks, CA 91403                  Facsimile:   (415) 433-9008
11 Telephone:   (818) 788-8300
   Facsimile:   (818) 788-8104
12
13 *Attorneys for Defendants and Nominal
   Defendant*

14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17

18  IN RE CYTRX CORP.                     ) Master File No.:  2:14-cv-06414 GHK
19  STOCKHOLDER DERIVATIVE              ) (PJWx)
    LITIGATION                          )
20                                      ) REPLY IN SUPPORT OF NOMINAL
                                        ) DEFENDANT'S MOTION TO DISMISS
21                                      ) COMPLAINTS PURSUANT TO RULES
                                        ) 12(b)(3) AND 23.1, OR, IN THE
22                                      ) ALTERNATIVE, MOTION TO STAY
                                        )
23  THIS DOCUMENT RELATES TO:           )
                                        ) Date:   December 8, 2014
24  1) Case No. 2:14-cv-06414-GHK       ) Time:   9:30 a.m.
    (PJWx) ("Pankratz")                 ) Judge: Hon. George H. King
25                                      ) Ctrm.: 650
    2) Case No. 2:14-cv-06451-GHK       )
26  (PJWx) ("Taylor")                   )
                                        )
27                                      )

28

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................... 6

I. PLAINTIFFS CANNOT REFUTE THE ARGUMENT THAT CYTRX'S FORUM SELECTION BYLAW IS VALID AND ENFORCEABLE ................................................................................ 6

    A. The Bylaw Is Facially Valid ..................................................... 6

        1. Under The Internal Affairs Doctrine, Delaware Law Determines The Validity Of The Bylaw ............................ 6

        2. Plaintiffs Erroneously Rely On *Galaviz* ............................ 7

    B. The Bylaw Is Enforceable "As Applied" ................................. 10

        1. Plaintiffs Cannot Show That The Bylaw Was Affected By Fraud, Undue Influence, Or Overweening Bargaining Power ....................................... 11

        2. Plaintiffs Cannot Show That They Will Be So Inconvenienced So As To Be Denied Their Day In Court ................................................................................. 13

        3. The Bylaw Does Not Contravene Public Policy ............... 13

II. IN THE ALTERNATIVE, THE ACTIONS SHOULD BE STAYED .................................................................................. 14

    A. This Action Should Be Stayed In Favor Of The Delaware Derivative Action Because They Are Virtually Identical Actions ...................................................................................... 15

    B. This Action Should Be Stayed For The Securities Class Actions ...................................................................................... 17

CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*American Life Insurance Co. v. Parra*,
25 F. Supp. 2d 467 (D. Del. 1998) ................................................. 12

*AmerisourceBergen Corp. v. Roden*,
495 F.2d 1143 (9th Cir. 2007) ....................................................... 17

*Argueta v. Banco Mexicano*,
87 F.3d 320 (9th Cir. 1996) ........................................................... 10

*Ash v. Alexander*,
No. 99 Civ. 3820 (JSR)
2000 WL 20704 (S.D.N.Y. Jan. 12, 2000) ................................. 5, 15

*ATP Tour, Inc. v. Deutscher Tennis Bund*,
91 A.3d 554 (Del. 2014) ................................................................ 14

*Boilermakers Local 154 Retirement Fund v. Chevron Corp.*,
73 A.3d 934 (Del. Ch. 2013) .................................................*passim*

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ....................................................................... 13

*City of Providence v. First Citizens BancShares, Inc.*,
C.A. Case No. 9795-CB
2014 WL 4409816 (Del. Ch. Sept. 8, 2014) .................................... 9

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ......................................................... 14

*In re Countrywide Financial Corp. Derivative Litigation*,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) .......................................... 14

*Cucci v. Edwards*,
No. SACV 07-532 PSG (MLGx)
2007 WL 3396234 (C.D. Cal. Oct. 31, 2007) ................................ 17

*Double Z Enterprises, Inc. v.General Marketing Corp.*,
No. C.A. 97C-08-076
2000 WL 970718 (Del. Super. Ct. June 1, 2000) ........................... 11

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ......................................................................... 6

*In re Facebook, Inc. IPO Sec. & Derivative Litigation*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013) ............................................. 8

*Filtrol Corp. v. Kelleher*,
467 F.2d 242 (9th Cir. 1972) ....................................................5, 14

iii

*Galaviz v. Berg*,
    763 F. Supp. 2d 1170 (N.D. Cal. 2011) .................................................. 2, 8, 11

*Kidsco Inc. v. Dinsmore*,
    674 A.2d 483 (Del. Ch. 1995) .......................................................... 2, 9

*Landis v. North American Co.*,
    299 U.S. 248 (1936) ....................................................................... 14

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................ 3, 10, 11

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) .............................................................. 10

*McDermott Inc. v. Lewis*,
    531 A.2d 206 (Del. 1987) ................................................................ 7

*North ex rel.Chemed Corp. v. McNamara*,
    No. 1:13-cv-833
    2014 WL 4684377 (S.D. Ohio Sept. 19, 2014) .................................. 13

*Rogers v. Guaranty Trust Co. of New York*,
    288 U.S 123 (1933) ....................................................................... 6

*Rosenblum v. Sharer*,
    No. CV 07-6140 PSG (PLAx)
    2008 WL 9396534 (C.D. Cal. July 28, 2008) .................................. 17

*Sabbag v. Cinnamon*,
    No. 5:10-cv-02735-JF (HRL)
    2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) .................................. 15

*In re Sagent Technology, Inc., Derivative Litigation*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) .......................................... 7

*In re STEC, Inc. Derivative Litigation*,
    Nos. CV 10-00667, 10-00220-JVS (MLGx)
    2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) .............................. 6, 18

*In re Verisign Derivative Litigation*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .......................................... 6

**Statutes and Rules**

Del. Code tit. 8, § 109 ............................................................... 3, 9, 14

Fed. R. Civ. P. 12(b)(3) .................................................................. 5, 18

Fed. R. Civ. P. 23.1 ....................................................................... 18

iv

1  **Other Authorities**

2

3     Restatement (Second) of Conflict of Laws § 302 (1971) .............................................7

4     Joseph A. Grundfest & Kristen A. Savelle, *The Brouhaha Over Intra-*
      *Corporate Forum Selection Provisions: A Legal, Economic, and Political*
5     *Analysis,*
          68 Bus. Law. 325 (2013) ....................................................................9

6     Deborah A. DeMott & David F. Cavers, *Shareholder Derivative Actions: Law*
      *& Practice* § 1:1 (2014-2015 ed.)……………………………………………1
7

8     1 Ved P. Nanda & Ralph B. Lake, *The Law of Transnational Business*
      *Transactions* (2014) ....................................................................12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOMINAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINTS, OR, IN THE
ALTERNATIVE, TO STAY

**INTRODUCTION**

"A derivative suit differs in a fundamental respect from a class action brought by a corporation's shareholders. Both are representative actions, but the claims asserted in a derivative suit are those of the corporation, while the claims asserted in a class action are individual claims of injury suffered by the shareholders themselves." Deborah A. DeMott & David F. Cavers, *Shareholder Deriv. Actions: Law & Prac.* § 1:1 (2014-2015 ed.).[1]  Because the real party in interest is the corporation, not the shareholder-plaintiff, the law expects and requires that a derivative suit be pursued on behalf of the corporation—not the representative shareholders. The Opposition is illustrative, as Plaintiffs discard the best interests of CytRx and its shareholders in a self-interested pursuit of duplicative, last-in-time derivative litigation.[2]  Unconcerned with what is good for the corporation, unconcerned that the derivative litigation had already been proceeding in Delaware by the time Plaintiffs filed their Complaints, and unconcerned with the reality that if the derivative litigation indeed has merit it will bear fruit *for the corporation* in Delaware just as it would in this Court, the Opposition displays Plaintiffs' fixation on protecting their self-interests at the corporation's expense. Plaintiffs simply do not care whether the same lawsuit is pursued in multiple jurisdictions. In their desperate attempt to preserve their self-interests, Plaintiffs advance several reasons to ignore the Bylaw and reject the alternative motion to stay the cases for the nearly identical derivative litigation in the Delaware Court of Chancery (the "Delaware Derivative Action") and/or the consolidated securities class action litigation pending in this Court and the class action litigation pending in Los Angeles County Superior

---

[1] Regarding citations, all emphasis is added, and all internal citations, quotations and alterations are omitted, unless otherwise noted.

[2] "Motion" or "Mot." refers to the Nominal Defendant's Motion to Dismiss Complaints Pursuant to Rules 12(b)(3) and 23.1, Or, In The Alternative, To Stay, filed with this Court on October 20, 2014. (ECF No. 24.) "Opposition" or "Opp'n" refers to Plaintiffs' Opposition to the Motion, filed with this Court on November 6, 2014. (ECF No. 36.)

1  Court (collectively, the "Securities Class Actions"). Each reason is incorrect and

2  should be rejected.

3       <u>Forum Selection Bylaw</u>. Plaintiffs filed their shareholder derivative lawsuits

4  in the wrong forum. Under CytRx's forum selection bylaw (the "Bylaw"), derivative

5  actions must be filed in the Delaware Court of Chancery. Although their claims on

6  behalf of a Delaware corporation all arise under Delaware law (and thus will not be

7  prejudiced by being adjudicated in Delaware instead of California), Plaintiffs insist

8  on maintaining their actions in this Court. Plaintiffs do not profess that their forum

9  selection is in CytRx's interests. Indeed, they know they cannot, as forum selection

10 provisions protect the corporation's interest in avoiding the very type of multi-forum,

11 duplicative litigation that Plaintiffs seek to foist upon CytRx and its shareholders

12 here. Rather, they advance meritless arguments to ignore the Bylaw.

13      ***First***, Plaintiffs misconstrue *Boilermakers Local 154 Retirement Fund v.*

14 *Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013) ("*Boilermakers*"), and *Galaviz v. Berg*,

15 763 F. Supp. 2d 1170 (N.D. Cal. 2011). In a case of first impression, the *Galaviz*

16 court held that Board-adopted forum selection bylaws are unenforceable because the

17 contractual element of mutual consent is missing. 763 F. Supp. 2d at 1171. On the

18 heels of scholarly and industry reaction to the unexpected holding in *Galaviz*, the

19 Delaware Court of Chancery in *Boilermakers* undertook an extensive analysis of the

20 question. As *Boilermakers* explained (and subsequent courts have agreed), *Galaviz*

21 is based on a fundamental misunderstanding of Delaware law. Contrary to the

22 foundation upon which *Galaviz* bases its reasoning, Delaware courts have "long

23 rejected the so-called 'vested rights' doctrine, . . . which . . . asserts that boards

24 cannot modify bylaws in a manner that arguably diminishes or divests pre-existing

25 shareholder rights absent stockholder consent." *Boilermakers*, 73 A.3d at 955

26 (comparing *Galaviz*, 763 F. Supp. 2d at 1174, with *Kidsco Inc. v. Dinsmore*, 674

27 A.2d 483, 492 (Del. Ch. 1995)). Instead, Delaware courts hold that "where a

28 corporation's articles or bylaws 'put all on notice that the by-laws may be amended

2

1    at any time, *no vested rights can arise that would contractually prohibit an*
2    *amendment.*'" *Boilermakers*, 73 A.3d at 955 (emphasis in original).

3        Reexamining *Galaviz* with this corrected understanding of settled Delaware
4    law in hand, one squarely arrives at *Boilermakers*' holding that forum selection
5    bylaws are facially valid. *See Boilermakers*, 73 A.3d at 939. The mutual consent
6    that *Galaviz* mistakenly viewed as missing is, in fact, present, because "bylaws
7    constitute a binding part of the contract between a Delaware corporation and its
8    stockholders." *Id.* at 955. "Under that clear contractual framework, the stockholders
9    assent to not having to assent to board-adopted bylaws." *Id.* at 956. Where a
10   corporate charter confers the power to adopt bylaws upon the directors without a
11   shareholder vote pursuant to 8 Del. C. § 109(a), the shareholders are "on notice that,
12   as to those subjects that are subject of regulation by bylaw under 8 Del. C. § 109(b),
13   the board itself may act unilaterally to adopt bylaws addressing those subjects." *Id.*
14   at 950-51, 955-56. Forum selection for shareholder derivative actions is decidedly
15   one of those subjects under § 109(b) because it concerns the internal affairs of the
16   corporation. *Id.* at 950-51.

17       ***Second***, because the Bylaw is facially valid, the only inquiry is whether it is
18   enforceable "as applied." Under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1
19   (1972) ("*Bremen*"), the Bylaw is presumed enforceable. To overcome the
20   presumption, Plaintiffs must demonstrate that the Bylaw is affected by "fraud, undue
21   influence, or overweening bargaining power" or that enforcing it would be
22   "unreasonable." *Boilermakers*, 73 A.3d at 957 (citing *Bremen*). Other than
23   recycling rejected arguments aimed at whether <u>all</u> forum selection bylaws are invalid
24   (a facial challenge resolved by *Boilermakers*, as discussed above), Plaintiffs rest their
25   "as-applied" challenge on the wishful suggestion that the Bylaw should not be
26   enforced because it was enacted by the board of directors ***after*** the wrongdoing they
27   are alleged to have committed. (Opp'n at 12.) Such a timeline is not determinative,
28   nor is it factually applicable here, anyway.

3

1  In their desperation to generate a timeline to aid their cause, Plaintiffs attempt
2  to relate their DreamTeam and spring-loaded options allegations back to a pre-Bylaw
3  event—the filing of a Registration Statement in December 2012—which they now
4  announce for the first time is "a necessary component of the second prong of
5  Defendants' scheme at the center of this Action." (*Id.*)   To further stage a false
6  appearance of legitimacy, Plaintiffs also now assert that the Registration Statement
7  "contains materially false and misleading statements" (Opp'n at 13 n.17), although
8  nowhere do Plaintiffs explain what this actually means, much less supply citations of
9  where the particularized facts purportedly supporting this bald claim are pled.

10  Perhaps most revealing is that Plaintiffs' *ex post facto* concoction of a
11  DreamTeam scheme relating back to the December 2012 Registration Statement is
12  belied by the pleadings they actually filed before learning of the Bylaw.  In the first
13  paragraph of their Complaints, Plaintiffs define the "Relevant Period" of their
14  Complaints as "from 2013 to the present." (Compl. ¶ 1.)  This "Relevant Period" is,
15  of course, *after* the December 2012 Registration Statement.  As further example, the
16  DreamTeam "scheme" is repeatedly described in the Complaints as commencing
17  *after* the Bylaw's adoption in July 2013.  *See, e.g., id.* ¶ 36 ("***During the period of***
18  ***the Individual Defendants' illicit scheme*** of undisclosed paid promotions via
19  DreamTeam, the Company's stock price nearly quadrupled, from approximately
20  $2.27 per share on ***November 1, 2013*** to a high of $7.98 per share on
21  ***January 30, 2014*** . . . ."); ¶¶ 3, 33 ("In 2013, the defendants secretly hired stock
22  promotion firm the DreamTeam Group . . . . [Authors] published approximately 13
23  articles on CytRx between November 2013 and March 2014").  Even Plaintiffs'
24  reliance on an allegation *from a different lawsuit* about a September 2013 article
25  does not save them  (Opp'n at 13 n.16), since the Bylaw was adopted in July 2013.

26  Moreover, it defies logic to suggest that the "wrongdoing commenced in
27  December 2012 with the filing of the false and misleading Registration Statement"
28  (Opp'n at 13), on the ground that the Registration Statement "failed to disclose . . .

4

1  the relationship with DreamTeam." (Compl. ¶ 36.) Plaintiffs do not deny, because

2  they cannot, that CytRx hired or purportedly used DreamTeam until nearly a year

3  after the Registration Statement was issued and after the Bylaw was adopted.

4     For these reasons, Plaintiffs' desperate redressing of their Complaints do not

5  render the Bylaw unenforceable "as applied," and the Motion to Dismiss under Rule

6  12(b)(3) should be granted.

7     <u>Motion to Stay</u>. In the alternative, this Court should stay the case in favor of

8  the Delaware Derivative Action and/or the Securities Class Actions.

9     Regarding the Delaware Derivative Action, courts readily invoke a stay in

10 light of a "parallel consolidated derivative action raising the same issues" and in light

11 of the "significant risks . . . posed of piecemeal and inconsistent litigation." *Ash v.*

12 *Alexander*, 2000 WL 20704, at *3-4 (S.D.N.Y. Jan. 12, 2000) (where "both actions

13 are derivative shareholder suits arising out of the same events and involving

14 overlapping claims . . . [c]ontinuation of both suits . . . risks inconsistent findings

15 with respect to the real party in interest in both actions."). Plaintiffs provide no

16 evidence or argument regarding: (1) "the hardship or inequity which a party may

17 suffer in being required to go forward"; (2) "the orderly course of justice measured

18 in terms of the simplifying or complicating of issues, proof, and questions of law

19 which could be expected to result from a stay"; and (3) "the possible damage which

20 may result from the granting of a stay." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244

21 (9th Cir. 1972). Plaintiffs merely distort small distinctions between their Complaints

22 and the consolidated complaint in the Delaware Derivative Action to distract the

23 Court from the fact that they undeniably arise out of the same set of allegations and

24 concern precisely the same subject matter—DreamTeam and "spring-loaded"

25 options. (*See* Opp'n at 21.)

26    Regarding the Securities Class Actions, "[c]ourts generally stay a shareholder

27 derivative suit until the culmination of a securities class action when the cases arise

28 from the same factual allegations and the evidence in the former could jeopardize the

5

1   company's defense in the latter." *In re STEC, Inc. Derivative Litig.*, 2012 WL
2   8978155, at *4 (C.D. Cal. Jan. 11, 2012).  In response, Plaintiffs argue only that the
3   stay is a "delay tactic," without explaining why any delay would be prejudicial or
4   refuting the damage that will otherwise result to CytRx.  (Opp'n at 18.)

5      For each and all of these reasons, the Complaints should be dismissed, or, in
6   the alternative, stayed.

7   **ARGUMENT**

8   **I.   PLAINTIFFS CANNOT REFUTE THE ARGUMENT THAT CYTRX'S**
9   **FORUM SELECTION BYLAW IS VALID AND ENFORCEABLE**

10      **A.   The Bylaw Is Facially Valid**

11         **1.   Under The Internal Affairs Doctrine, Delaware Law**
         **Determines The Validity Of The Bylaw**

12      As CytRx demonstrated in its Motion, under the internal affairs doctrine,
13   Delaware law governs a challenge to the validity of the bylaws of a Delaware
14   corporation, as adopted.  (Mot. at 5-9.)  In response, Plaintiffs label this analysis a
15   "red herring" and hold that the doctrine is "irrelevant to the analysis before this
16   Court." (Opp'n at 9.)  Plaintiffs offer no supporting authority for this proposition
17   (because it does not exist), and ignore the long-standing body of law requiring that
18   disputes regarding a corporation's internal affairs be governed by the laws of the
19   state of incorporation:

20         It has long been settled doctrine that a court—state or
21         federal—sitting in one State will as a general rule decline
22         to interfere with . . . the management of the internal affairs
23         of a corporation organized under the laws of another state
24         but will leave controversies as to such matters to the courts
25         of the state of the domicile.

26   *Rogers v. Guar. Trust Co. of N.Y.*, 288 U.S. 123, 130 (1933); *see also Edgar v. MITE*
27   *Corp.*, 457 U.S. 624, 645 (1982); *In re Verisign Derivative Litig.*, 531 F. Supp. 2d
28   1173, 1214 (N.D. Cal. 2007) ("Under the 'internal affairs' doctrine, the law of the

6

1  state of incorporation governs liabilities of officers or directors to the corporation
2  and its shareholders.").

3       This rule of law is supported by policies critical to the operation of domestic
4  corporations, including certainty, predictability and uniformity of result, and
5  conservation of resources by limiting disputes regarding governing law.  *See*
6  *McDermott Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1987).  These factors make the
7  application of the internal affairs doctrine imperative:

8         Given the significance of these considerations, application
9         of the internal affairs doctrine is not merely a principle of
10         conflicts law.  It is also one of serious constitutional
11         proportions—under due process, the commerce clause and
12         the full faith and credit clause—so that the law of one state
13         governs the relationships of a corporation to its
14         stockholders, directors and officers in matters of internal
15         corporate governance.

16  *Id.*

17       As the Motion establishes, challenges regarding a corporation's bylaws fall
18  squarely within the internal affairs doctrine and thus must be determined by applying
19  the law of the state of incorporation.  *See* Mot. at 8 (collecting case authority); *In re*
20  *Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1090 (N.D. Cal. 2003)
21  ("'Internal affairs' are matters such as . . . adoption of bylaws [and] corporate charter
22  and bylaw amendments.") (citing Restatement (Second) of Conflict of Laws § 302
23  (1971)).  "[A] foreign court that respects the internal affairs doctrine, as it must,
24  when faced with a motion to enforce the bylaws will consider, as a first order issue,
25  whether the bylaws are valid under the 'chartering jurisdiction's domestic law.'"
26  *Boilermakers*, 73 A.3d at 938.

27       **2.**    **Plaintiffs Erroneously Rely On *Galaviz***
28       Plaintiffs argue that *Galaviz* "makes it clear that the Clause is unenforceable"

7

1  and summarily deny CytRx's argument and counter-authority that the *Galaviz*

2  holding "rests[s] on a failure to appreciate the contractual framework established by

3  the DGCL for Delaware corporations and their shareholders."  (Opp'n at 14, 15

4  (citing Mot. at 10 n.6).)  Plaintiffs' reliance on *Galaviz* is misplaced.[3]

5      In *Galaviz*, the court assessed the enforcement of a bylaw adopted by Oracle's

6  board without stockholder approval, as permitted by Oracle's articles of

7  incorporation, designating the Delaware Chancery Court as the exclusive forum for

8  any derivative action.  *Galaviz*, 763 F. Supp. 2d at 1172.  Following the framework

9  in *Bremen*, the court reported that plaintiffs did not "suggest[] the bylaw was the

10  product of fraud or undue influence," that there was no showing of inconvenience so

11  as to "deprive [plaintiffs] of their day in court," and that it would not violate

12  fundamental public policy "to require resolution of shareholder derivative actions in

13  a corporation's home state."  *Id.* at 1173.  The court acknowledged that were these

14  "factors controlling here, there would be little basis to decline to enforce" the Oracle

15  forum selection bylaw.  *Id.* at 1174.

16      The *Galaviz* court nonetheless refused to enforce the bylaw, reasoning that a

17  contracting party may not unilaterally add or modify contractual provisions without

18  mutual consent.  *Id.* at 1174 (declining to enforce where "venue provision was

19  unilaterally adopted . . . without the consent of existing shareholders who acquired

20  their shares when no such bylaw was in effect").  But as *Boilermakers* dissects, the

21  *Galaviz* opinion is erroneously premised on the so-called "vested rights doctrine,"

22  which "asserts that boards cannot modify bylaws in a manner that arguably

23  ───────────────
[3]      Plaintiffs' single other authority in support of their contention that the Bylaw
24  is invalid is inapposite. (*See* Opp'n at 14.) In *In re Facebook, Inc. IPO Securities & Derivative Litigation*, 922 F. Supp. 2d 445 (S.D.N.Y. 2013), the court addressed a
25  challenge to a forum selection clause in the corporation's certificate of incorporation and *declined* to extend *Galaviz*. *Id.* at 462. Instead, it determined that the amended
26  certificate of incorporation did not become effective under Delaware law until filed with the Secretary of State, and since the certificate was filed four days *after* the
27  challenged conduct, "the claims and parties involved in [the] action [were] not subject to the forum selection clause in the Certificate." *Id.* at 463. This analysis is
28  inapplicable to this case.

NOMINAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINTS, OR, IN THE ALTERNATIVE, TO STAY

1   diminishes or divests pre-existing shareholder rights absent stockholder consent."[4]

2   *Boilermakers*, 73 A.3d at 955.  That doctrine, however, has long been rejected under

3   the governing Delaware law.  *See Kidsco Inc.*, 674 A.2d at 492.  Therefore, as

4   *Boilermakers* held, "where a corporation's articles or bylaws 'put all on notice that

5   the by-laws may be amended at any time, *no vested rights can arise that would*

6   *contractually prohibit an amendment*.'"[5]  *Boilermakers*, 73 A.3d at 955 (emphasis in

7   original) (citing *Kidsco Inc.*, 674 A.2d at 492).

8           Completing the analysis based on a correct contractual framework,

9   *Boilermakers* holds that forum selection bylaws are facially valid.  *See Boilermakers*,

10  73 A.3d at 939.  "Under that clear contractual framework, the stockholders assent to

11  not having to assent to board-adopted bylaws."  *Id.*  The mutual consent that *Galaviz*

12  mistakenly viewed as missing is, in fact, present, because "bylaws constitute a

13  binding part of the contract between a Delaware corporation and its stockholders."

14  *Id.* at 955.  Where a corporate charter confers the power to adopt bylaws upon the

15  directors without a shareholder vote, as permitted by 8 Del. C. § 109(a), the

16  shareholders are "on notice that, as to those subjects that are subject of regulation by

17  bylaw under 8 Del. C. § 109(b), the board itself may act unilaterally to adopt bylaws

18  addressing those subjects."  *Id.* at 950-51, 955-56.  As *Boilermakers* confirms, forum

19

20  ───────────────
    [4]     Despite Plaintiffs' characterization of *Galaviz* as "seminal" (Opp'n at 3), that
21  case of first impression has been widely criticized by courts and legal authorities.
    *See* Mot. at 10 n.6.  *See also* Joseph A. Grundfest & Kristen A. Savelle, *The*
22  *Brouhaha Over Intra-Corporate Forum Selection Provisions: A Legal, Economic,*
    *and Political Analysis,* 68 Bus. Law. 325, 407 (2013) (noting that "if the *Galaviz*
23  analysis stands then much of standard corporate law practice regarding the
    amendment of bylaws must fall, and much larger bodies of corporate law must be
24  rewritten."); *City of Providence v. First Citizens BancShares, Inc.*, 2014 WL
    4409816, at *11 (Del. Ch. Sept. 8, 2014) ("For the reasons set forth in *Chevron* and
25  this Opinion, the *Galaviz* and *TriQuint* decisions, to the extent they purport to apply
    Delaware law, are based on a misapprehension of Delaware law regarding the facial
26  validity and as-applied analysis of forum selection bylaws.").
    [5]     Accordingly, Plaintiffs' argument that the Bylaw cannot be enforced because
27  it was "unilaterally adopted after Plaintiffs purchased stock" (Opp'n at 16 & n.19), is
    contrary to Delaware law.  *Boilermakers*, 73 A.3d at 955 (citing *Kidsco Inc.*, 674
28  A.2d at 492 (rejecting "vested rights doctrine")).

───────────────
9

1  selection for shareholder derivative actions is decidedly one of the proper subjects of
2  a bylaw because it concerns the internal affairs of the corporation. *Id.* at 950-51.

3      In sum, the contract between the shareholder and the corporation includes, as
4  permitted by law, mutual assent to the board adopting a bylaw—without shareholder
5  approval—providing that derivative actions must be filed in a particular forum.
6  Plaintiffs have not provided any authority applying the holding in *Galaviz* over such
7  reasoning or authority rejecting the reasoning of *Boilermakers*, nor have they
8  demonstrated that this Court should ignore the law upholding the facial validity of
9  forum selection bylaws on statutory and contractual grounds.   Accordingly, the
10 Bylaw is facially valid.

11     **B.     The Bylaw Is Enforceable "As Applied"**

12     Whether a forum selection bylaw is valid "as applied" is guided by the
13 analysis in *Bremen*.  (*See* Opp'n at 10-11.)  Under *Bremen*, the Bylaw is ***presumed***
14 ***valid and enforceable***, unless it is affected by "fraud, undue influence, or
15 overweening bargaining power" or "enforcement is shown by the resisting party to
16 be 'unreasonable.'"   (Mot. at 9 (citing *Boilermakers*, 73 A.3d at 957 (citing
17 *Bremen*)).)   To overcome this presumption, Plaintiffs must show that the forum
18 selection provision:

19         (1)  was  the  result  of  fraud,  undue  influence,  or
20         overweening bargaining power; (2) the selected forum is so
21         'gravely difficult and inconvenient' that the complaining
22         party will 'for all practical purposes be deprived of its day
23         in court'; or (3) enforcement of the clause would
24         contravene a strong public policy of the forum in which the
25         suit is brought.

26 *Boilermakers*, 73 A.3d at 957; *see also Argueta v. Banco Mexicano, S.A.*, 87 F.3d
27 320, 325 (9th Cir. 1996); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514
28 (9th Cir. 1988); (Mot. at 9).

1   A party seeking to circumvent a forum selection provision bears a "heavy

2   burden" to establish that it should not be enforced.   *Bremen*, 407 U.S. at 17.

3   Plaintiffs do not, and cannot, meet that burden.

### 1. Plaintiffs Cannot Show That The Bylaw Was Affected By Fraud, Undue Influence, Or Overweening Bargaining Power

6   Plaintiffs advance no facts—much less particularized facts—that the Bylaw is

7   affected by "fraud, undue influence, or overweening bargaining power."   *Bremen*,

8   407 U.S. at 12.

9   Attempting to exploit the *Galaviz* court's concern that Oracle's forum

10  selection bylaw was adopted "after the majority of the purported wrongdoing is

11  alleged to have occurred," *Galaviz*, 763 F. Supp. 2d at 1174, Plaintiffs advance a

12  forced construction of their Complaints by now claiming that the December 2012

13  filing of the Registration Statement "was a necessary component of the second prong

14  of Defendants' scheme at the center of this Action."  (Opp'n at 12.)  The argument

15  fails for several independent reasons.

16  As an initial matter, the filing of the December 2012 Registration Statement

17  does not constitute a "majority of the purported wrongdoing" alleged to have

18  occurred.  *Galaviz*, 763 F. Supp. 2d at 1174.  Accordingly, Plaintiffs' challenge fails

19  even pursuant to the infirm case law upon which it rests.  In addition, even crediting

20  Plaintiffs' newly invented relation-back theory of the timeline scheme, the mere facts

21  that an Registration Statement was filed in December 2012 and the Bylaw was

22  adopted in July 2013 do not suffice to show "fraud, undue influence, or overweening

23  bargaining power."  *Bremen*, 407 U.S. at 12.  Plaintiffs accompany their argument

24  with none of the factors considered for fraud,[6] undue influence, or overweening

25

---

26  [6]   "To invalidate a forum selection clause on the grounds of fraud, the party

27  seeking to invalidate the clause must demonstrate that the clause itself was procured by fraud."  *Double Z Enters., Inc. v. Gen. Mktg. Corp.*, 2000 WL 970718, at *3 (Del. Super. Ct. June 1, 2000) (enforcing forum selection provision where there were no

28  allegations or evidence to suggest that there was fraud in the procurement of the

*(cont'd)*

11

1    bargaining power.[7]

2        Moreover, not only are there no allegations in the Complaints to support

3    Plaintiffs' convenient new theory, the allegations actually pled <u>defeat</u> the theory

4    invented in the Opposition.  Plaintiffs allege that the "Relevant Period" of their

5    Complaints begins ***after*** the December 2012 filing (Compl. ¶ 1 (defining Relevant

6    Period as "from 2013 to the present")), and also that DreamTeam was purportedly

7    hired in 2013, ***after*** the December 2012 Registration Statement was filed.  (*See id.* ¶¶

8    3, 33 ("In 2013, the defendants secretly hired stock promotion firm DreamTeam

9    Group . . . . [Authors] published approximately 13 articles on CytRx between

10   November 2013 and March 2014"); *see also id.* ¶ 36 ("***During the period of the***

11   ***Individual Defendants' illicit scheme*** of undisclosed paid promotions via

12   DreamTeam, the Company's stock price nearly quadrupled, from approximately

13   $2.27 per share on ***November 1, 2013*** to a high of $7.98 per share on

14   ***January 30, 2014*** . . . .").)   Furthermore, it defies logic to suggest that the

15   "wrongdoing commenced in December 2012 with the filing of the false and

16   misleading Registration Statement" (Opp'n at 13), because the Registration

17   Statement "failed to disclose . . . the relationship with DreamTeam." (Compl. ¶ 36.)

18   There are no allegations, because there cannot be, that DreamTeam was hired by

19   CytRx at the time of the filing of the December 2012 Registration Statement.[8]

20       For these reasons, Plaintiffs have no basis for claiming any "fraud, undue

21   influence, or overweening bargaining power." (Mot. at 11.)

22   _____
     *(cont'd from previous page)*
23   specific provision) (citing *Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 478 (D.
     Del. 1998)).
24   [7]   The undue influence and overweening bargaining power factors have been
     characterized as "overreaching" or "unconscionable conduct." *See* 1 Ved P. Nanda &
25   Ralph B. Lake, *The Law of Transnational Business Transactions* § 3:20 (2014).
     [8]   Plaintiffs' reliance on an allegation ***from a different pending action*** based on
26   an article purportedly filed in September 2013 is also fatally flawed. (Opp'n at 13
     n.16.)   Though this allegation cannot be considered, the fact that the article was
27   purportedly published ***in September 2013*** merely confirms that CytRx's Bylaw was
     enacted before any purported wrongdoing.
28

                                            12

2.   **Plaintiffs Cannot Show That They Will Be So Inconvenienced So As To Be Denied Their Day In Court**

Plaintiffs make no argument that litigating in Delaware would be so difficult or inconvenient so as to deprive them of a meaningful day in court, nor do they challenge CytRx's analysis that there are no other obstacles to bringing their Delaware-based derivative claims in Delaware. (*See* Mot. at 12 (establishing that there are no subject matter or personal jurisdiction barriers; Plaintiffs have not alleged causes of action that must be brought exclusively in federal court).)

3.   **The Bylaw Does Not Contravene Public Policy**

Enforcing the forum selection bylaw furthers public policy by concentrating derivative litigation that relates to substantially similar subject matter. (Mot. at 13-14.) Plaintiffs do not (and cannot) dispute the efficiencies resulting from the Bylaw and the undeniable public policy endorsing its enforceability. *See, e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991) ("[A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended . . . ."); *Boilermakers*, 73 A.3d at 952 ("[F]orum selection bylaws are designed to bring order to what the boards of Chevron and FedEx say they perceive to be a chaotic filing of duplicative and inefficient derivative and corporate suits against the directors and the corporations."); *North ex rel. Chemed Corp. v. McNamara*, 2014 WL 4684377, at *7 (S.D. Ohio Sept. 19, 2014) (recognizing that forum selection bylaws achieve "cost and efficiency benefits that inure to the corporation and its shareholders by streamlining litigation into a single forum").

Rather, and clearly without regard to the interests of the corporation they purport to represent, Plaintiffs attempt to argue that the forum selection clause is "fundamentally unfair" because it binds the shareholder "preemptively" to future decisions by the Board. Plaintiffs posit that "this may or may not be acceptable under Delaware corporate law." (Opp'n at 17.) As discussed above, Plaintiffs'

13

1  assertions here are baseless and rejected by Delaware law.  *See ATP Tour, Inc. v.*

2  *Deutscher Tennis Bund*, 91 A.3d 554, 560 (Del. 2014) (affirming that a "bylaw

3  provision is enforceable against members who joined the corporation before the

4  provision's enactment and who agreed to be bound by rules 'that may be adopted

5  and/or amended from time to time' by the board" citing 8 Del. C. § 109;

6  *Boilermakers*, 73 A.3d at 956)).  In addition to the internal affairs doctrine, no policy

7  of California provides that the derivative action proposed by Plaintiffs cannot be

8  adjudicated by the Delaware Court of Chancery.  *See, e.g.*, *In re Countrywide Fin.*

9  *Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1173 (C.D. Cal. 2008) ("Thus, the

10  Delaware Court of Chancery, which unquestionably has a well-recognized expertise

11  in the field of state corporation law, is a particularly suitable forum to adjudicate

12  those disputes.").

13  **II.    <u>IN THE ALTERNATIVE, THE ACTIONS SHOULD BE STAYED</u>**

14        This Court has the authority to control the disposition of all matters before it in

15  a "manner which will promote economy of time and effort for itself, for counsel, and

16  for litigants."  *Filtrol*, 467 F.2d at 244 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265,

17  268 (9th Cir. 1962)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)

18  ("[T]he power to stay proceedings is incidental to the power inherent in every court

19  to control the disposition of the [cases] on its docket . . . .").  In determining whether

20  a proceeding should be stayed, courts weigh competing interests including: (1) "the

21  hardship or inequity which a party may suffer in being required to go forward"; (2)

22  "the orderly course of justice measured in terms of the simplifying or complicating

23  of issues, proof, and questions of law which could be expected to result from a stay";

24  and (3) "the possible damage which may result from the granting of a stay."  *Filtrol*,

25  467 F.2d at 244.

26        CytRx's Motion establishes that all of these factors weigh in favor of a stay

27  here.  (Mot. at 14-20.)  Plaintiffs have not put forward any affirmative argument to

28  establish the basis of their competing interest.  Indeed, the Opposition poses no

14

1    argument that CytRx, on whose behalf they bring the lawsuit, will suffer any harm

2    from a stay.[9]

3         **A.    This Action Should Be Stayed In Favor Of The Delaware Derivative Action Because They Are Virtually Identical Actions**

4

5         Plaintiffs fail to refute CytRx's arguments that the CytRx shareholders can

6    only maintain one derivative action on behalf of the corporation, and that

7    simultaneous derivative actions are inherently injurious to the corporation.  (Mot. at

8    16-17.)  Plaintiffs rely solely on their argument that the complaints in the two cases

9    differ slightly, while simultaneously conceding that their claims arise out of the same

10   course of conduct.  (Opp'n at 21 ("[T]he operative pleading in the Delaware Action

11   makes passing references to the Dream Team stock promotion scandal"; "allegations

12   of spring-loaded options are merely part of a much larger picture posed in this

13   Action, while allegations of spring loaded options fundamentally comprise the

14   entirety of the Delaware Action.").)  Plaintiffs provide no law in support of their

15   position that this "distinction without a difference" outweighs the factors that support

16   a stay.

17        As CytRx showed, courts readily invoke a stay in light of a "parallel

18   consolidated derivative action raising the same claims" in light of the "significant

19   risks . . . posed of piecemeal and inconsistent litigation."  *Ash*, 2000 WL 20704, at *3

20   (where "both actions are derivative shareholder suits arising out of the same events

21   and involving overlapping claims[,] . . . [c]ontinuation of both suits . . . risks

22   inconsistent findings with respect to the real party in interest in both actions").

23   "Exact parallelism is not required. . . . It is enough if the two proceedings are

24   substantially similar."  *Sabbag v. Cinnamon*, 2010 WL 8470477, at *5, *8 (N.D. Cal.

25   Dec. 10, 2010) ("Proceeding with two separate derivative actions, each seeking to

26

27   [9]   Plaintiffs argue that CytRx challenges the purpose of derivative litigation.
     (Opp'n at 20.)  CytRx's brief nowhere challenges the validity of derivative litigation

28   brought in the proper forum in the context of corporate governance.

15

1    remedy the same wrongs, serves only to injure the corporation and its shareholders

2    by forcing the corporation to incur duplicative litigation expenses.").  Plaintiffs cite

3    no law to the contrary, because none exists.

4         Moreover, Plaintiffs' characterization of the Delaware Derivative Action is

5    misleading.  Both the Delaware Derivative Action and the Complaints arise out of

6    the same sets of allegations: that the directors "caused the Company to enter into a

7    contract with DreamTeam to conduct a secret promotional campaign touting CytRx

8    stock" (Derivative Compl.[10] ¶ 6; *see also* Compl. ¶ 3); and that the Board "either

9    knew or recklessly disregarded that DreamTeam's promotional articles failed to

10   disclose that the authors were being paid" (Derivative Compl. ¶ 82; *see also* Compl.

11   ¶ 32 at 18).  The Delaware Derivative Action includes further allegations about

12   DreamTeam, including that the directors breached their fiduciary duties by "failing

13   to ensure that CytRx adequately disclosed the use of DreamTeam to promote its

14   stock to retail investors." (Derivative Compl. ¶ 72.)

15        Similarly, though Plaintiffs downplay the role of the purported "spring-loaded

16   options awards" in an attempt to somehow differentiate their actions from the

17   Delaware Derivative Action, this strategy fails.  While Plaintiffs claim that their

18   "allegations and claims regarding spring-loaded options are merely part of a much

19   larger picture posed in this Action" (Opp'n at 21), the Complaints abound with

20   allegations about the option awards.  (*See, e.g.*, Compl. ¶ 41 ("These series of events

21   present a variation on the classic case of spring-loading."); *see also* ¶¶ 6, 39, 53, 62,

22   87-88, 91.)  In fact, while selectively downplaying the options allegations in their

23   Opposition (Opp'n at 21), Plaintiffs argue that demand is futile because of the

24   Directors' receipt of the options (Compl. ¶¶ 52-55, 62-64), and assert multiple causes

25   of action based on such allegations.

26        Finally, Plaintiffs do not even attempt to show that they will suffer any

27   ───────────────────
     [10]  "Derivative Compl." refers to Exhibit 9 of the Declaration of Allen L. Lanstra,
28   filed on October 20, 2014.  (ECF No. 27.)

1   damage from a stay in favor of the Delaware Derivative Action.  (Opp'n at 21.)

2   **B.    This Action Should Be Stayed For The Securities Class Actions**

3   As CytRx showed, simultaneous prosecution of this Action and the Securities

4   Class Actions will lead to duplicative litigation and an unnecessary waste of

5   resources. Courts have stayed derivative actions until the underlying securities class

6   action is resolved due to this concern.  *See, e.g.*, *Rosenblum v. Sharer*, 2008 WL

7   9396534, at *8 (C.D. Cal. July 28, 2008) ("[T]he interests of litigative efficiency and

8   judicial economy weigh heavily in favor of entry of a stay" of derivative litigation

9   because "to prevail in this derivative action, [plaintiff] will need to prove the same

10  core factual allegations at issue in the securities class action."); *Cucci v. Edwards*,

11  2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (staying derivative action during

12  pendency of securities class action because "both actions rest on the same or closely

13  related transactions, happenings or events, and thus will call for the determination of

14  the same or substantially related questions of fact").

15  In response, Plaintiffs declare that the stay is a "delay tactic" by the

16  corporation (Opp'n at 18), without explaining why any such resulting delay would

17  prejudice the corporation.  Plaintiffs also proffer a non-sequitur argument about

18  "obvious stand-alone damages Plaintiffs allege CytRx has already suffered." (Opp'n

19  at 19.)  Plaintiffs overlook that the motion to stay is based on the indisputable waste

20  of resources that would result from allowing this Action to proceed simultaneously

21  with the Securities Class Actions.

22  Plaintiffs present no fact or law contradicting CytRx's argument that it will

23  suffer harm by litigating both actions simultaneously.  (*See* Opp'n at 18-20.)

24  Plaintiffs cite *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143 (9th Cir. 2007), for

25  the proposition that "the mere potential for conflict in the results of adjudications

26  does not, without more, warrant staying exercise of federal jurisdiction." *Id.* at 1151.

27  That case, however, involved abstention under the *Younger* doctrine, which has no

28  bearing on the damages a corporation incurs when forced to prosecute a derivative

17

action while simultaneously defending a related pending action.  In fact, Plaintiffs do not even argue that CytRx ***can*** prosecute this Action concurrent with the securities action without suffering harm.   As established in CytRx's Motion, "[c]ourts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter."   *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *4.

Plaintiffs cite to a number of derivative actions that have purportedly been "permitted" to proceed in tandem with securities actions arising from the same allegations.  (Opp'n at 20 n.25.)   All of these cases are inapposite.  None of the parties in any of the four derivative actions that Plaintiffs identify ever moved for a stay in favor of related securities litigation; moreover, in many of the cases, the parties stipulated to a stay, and every case settled prior to final determination of the defendants' motions to dismiss.[11]  These cases were not "permitted" to proceed at all, and none had yet reached the stage where pursuing parallel litigation would harm the defendant corporate entity.  Finally, one of the purported derivative suits cited by Plaintiffs, *California Public Employees Retirement System v. UnitedHealth Group, Inc.*, No. 0:06-cv-02939-JMR-FLN (D. Minn.), is not a derivative action at all, but a securities class action that was consolidated into *In re UnitedHealth Group Inc. PSLRA Litigation*, No. 06-cv-01691-JMR-FLN (D. Minn.) (cited by Plaintiffs).  *See Cal. Pub. Emps.' Ret. Sys.*, Dkt. No. 33 (Consolidation Order).

---

[11]   *See In re Juniper Derivative Actions*, No. 5:06-cv-03396-JW (N.D. Cal.), Dkt. Nos. 75 (entering first stay), 83 (entering second stay), 92 (entering third stay), 126 (approving settlement); *In re Apple Inc. Derivative Litig.*, No. 5:06-cv-04128-JF (N.D. Cal.),  Dkt. Nos. 195 (order vacating MTD hearing date), 205 (stipulation of settlement); *Alaska Elec. Pension Fund v. Sperling*, No. CV 2:06-cv-02124-ROS (D. Ariz.), Dkt. Nos. 56 (granting conditional stay pending investigation of claims by the company), 180 (granting stay pending mediation), 183 (stipulation to extend stay pending settlement); *Wilder v. Doris*, No. 4:07-cv-01500-CW (N.D. Cal.), Dkt. 100 (approving settlement).

NOMINAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINTS, OR, IN THE ALTERNATIVE, TO STAY

1

## <u>CONCLUSION</u>

2     For the foregoing reasons, CytRx requests that this Court dismiss these actions

3 for improper venue under Rule 12(b)(3), and for failure to make a demand pursuant

4 to Rule 23.1.   In the alternative, the action should be stayed until the pending

5 Delaware Derivative Action and Securities Class Actions are resolved.

6

7 DATED:  November 20, 2014         SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM LLP
8

9                                    By:   _____/s/ *Thomas J. Nolan*_____

10                                         Thomas J. Nolan
                                     Attorneys for Defendants and Nominal Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28