THOMAS J. NOLAN (SBN 66992)
Thomas.Nolan@skadden.com
PETER B. MORRISON (SBN 230148)
Peter.Morrison@skadden.com
ALLEN L. LANSTRA (SBN 251510)
Allen.Lanstra@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

CLIFFORD H. PEARSON (SBN 108523)    GEORGE S. TREVOR (SBN 127875)
cpearson@pswlaw.com                 gtrevor@pswlaw.com
ALEXANDER SAFYAN (SBN 277856)       PEARSON, SIMON & WARSHAW LLP
asafyan@pswlaw.com                  44 Montgomery Street, Suite 2450
PEARSON, SIMON & WARSHAW LLP        San Francisco, CA 94104
15165 Ventura Boulevard, Suite 400  Telephone:   (415) 433-9000
Sherman Oaks, CA 91403              Facsimile:    (415) 433-9008
Telephone:   (818) 788-8300
Facsimile:    (818) 788-8104

*Attorneys for Defendants and Nominal
Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CYTRX CORP. STOCKHOLDER DERIVATIVE LITIGATION | Master File No.: 2:14-cv-06414 GHK (PJWx) |
| | REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS |
| | Date:          December 8, 2014 |
| THIS DOCUMENT RELATES TO: | Time:          9:30 a.m. |
| | Judge:        Hon. George H. King |
| 1) Case No. 2:14-cv-06414-GHK (PJWx) ("Pankratz") | Ctrm.:         650 |
| 2) Case No. 2:14-cv-06451-GHK (PJWx) ("Taylor") | |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 5

I.   PLAINTIFFS HAVE NOT ESTABLISHED DEMAND FUTILITY ............................................................... 5

    A.   Plaintiffs' Conclusory Allegations Are Inadequate To Establish Demand Futility ........................................ 5

    B.   Plaintiffs Have Not Pled Facts Specific To Each Director ......... 6

    C.   Plaintiffs Have Not And Cannot Establish Demand Futility For Each Of The Claims Alleged ................................ 6

        1.   Plaintiffs Fail To Plead Demand Futility For Each Claim Pled ........................................................ 6

        2.   Plaintiffs Have Not Established That Demand Was Futile For Claims Based On Purported "Spring-Loaded" Options .................................................. 7

            (a)   Demand Is Not Futile Based On The Receipt Of The Option Grants ................................ 7

            (b)   Demand Not Futile Based On Compensation Committee's Alleged Approval Of Spring-Loaded Options ........................................ 9

        3.   Plaintiffs Have Not Established That Demand Was Futile For Their DreamTeam-Related Allegations ........ 10

            (a)   Plaintiffs Have Failed To Demonstrate Substantial Likelihood Of Liability For "Adoption Or Tacit Approval Of An Illegal Business Strategy" ................................. 11

            (b)   Plaintiffs Have Failed To Demonstrate Substantial Likelihood Of Liability For Purportedly False SEC Filings ..................... 13

    D.   Messrs. Kriegsman And Rubinfeld Do Not Lack Independence ............................................................ 15

II.   PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR RELIEF ......................................................... 15

    A.   Plaintiffs' Claims Necessarily Sound In Fraud And Do Not Meet The Heightened Pleading Requirements Of Rule 9(b) .... 15

    B.   Plaintiffs Have Not Alleged Damages For The DreamTeam-Related Causes Of Action (Counts I, II, III, IV, V) ...................................................... 17

i

C.   Plaintiffs Still Fail To State A Claim For Breach Of
     Fiduciary Duty .................................................................18

     1.   Plaintiffs Do Not Plead Around The Exculpatory
          Clause .................................................................18

     2.   Count I Fails To State a Claim ....................................18

     3.   Count II Fails To State A Claim...................................19

D.   Plaintiffs Fail To Allege Unjust Enrichment (Counts III
     And VI) .....................................................................20

E.   Plaintiffs Fail To Allege Gross Mismanagement And
     Abuse Of Control (Counts IV And V)....................................20

F.   Count VII Is Abandoned.........................................................21

CONCLUSION...........................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*In re Accuray, Inc. Shareholder Derivative Litigation*,
    757 F. Supp. 2d 919 (N.D. Cal. 2010). ...................................................... 10, 13

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) .................................................................................. 2, 3

*In re Baxter International, Inc. Shareholders Litigation*,
    654 A.2d 1268 (Del. Ch. 1995) ............................................................................. 3

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
    833 A.2d 961 (Del. Ch. 2003) ............................................................................... 6

*In re Bidz.com, Inc. Derivative Litigation*,
    773 F. Supp. 2d 844 (C.D. Cal. 2011) .......................................................... 13, 18

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ................................................................................. 2, 5

*Cafasso v. General Dynamics C4 Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ............................................................................. 17

*In re Caremark International Inc. Derivative Litigation*,
    698 A.2d 959 (Del. Ch. 1996) ............................................................................... 3

*In re Citigroup Inc. Shareholders Litigation*,
    No. 19827
    2003 WL 21384599 (Del. Ch. June 5, 2003),
    *aff'd sub nom. Rabinovitz v. Shapiro*, 839 A.2d 666 (Del. 2003) .................. 1, 6

*Citron v. Fairchild Camera & Instrument Corp.*,
    569 A.2d 53 (Del. 1989) ....................................................................................... 3

*Conrad v. Blank*,
    940 A.2d 28 (Del. Ch. 2007) ................................................................................ 8

*Conservation Force v. Salazar*,
    677 F. Supp. 2d 1203 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240
    (9th Cir. 2011) .................................................................................................21

*In re Cooper Co., Inc. Shareholders Derivative Litigation*,
    No. 12584,
    2000 WL 1664167 (Del. Ch. Oct. 31, 2000)...................................................15

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ....................................................................5, 6

*Edmonds v. Getty*,
    524 F. Supp. 2d 1267 (W.D. Wash. 2007) .........................................................9

*Engel v. Sexton*,
    Civil Action Nos. 06-10447, 06-10547, 07-116,
    2009 WL 361108 (E.D. La. Feb. 11, 2009) ........................................................9

*Garvey v. Arkoosh*,
    354 F. Supp. 2d 73 (D. Mass. 2005).................................................11, 12, 13

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996)........................................................................5

*Grobow v. Perot*,
    526 A.2d 914 (Del. Ch. 1987) ...................................................................18

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003) ...................................................................11

*Harold Grill 2 IRA v. Chênevert*,
    Civil Action No. CV 7999-CS,
    2013 WL 3014120 (Del. Ch. June 18, 2013) ....................................................19

*Hopkins v. Women's Division, General Board of Global Ministries*,
    238 F. Supp. 2d 174 (D.D.C. 2002) .............................................................10

*In re Intel Corp. Derivative Litigation*,
    621 F. Supp. 2d 165 (D. Del. 2009) ............................................................11

iv

*Jones ex rel. CSK Auto Corp. v. Jenkins*,
    503 F. Supp. 2d 1325 (D. Ariz. 2007) ................................................3, 14, 15, 19

*In re Linear Technology Corp. Derivative Litigation*,
    No. C-06-3290 MMC,
    2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) ..................................................... 8

*In re MIPS Technologies, Inc., Derivative Litigation*,
    No. C-06-06699 RMW,
    2008 WL 3823726 (N.D. Cal. Aug. 13, 2008) ................................................. 18

*Mizel v. Connelly*,
    No. Civ.A. 16638,
    1999 WL 550369 (Del. Ch. July 22, 1999) ..................................................... 15

*In re MRV Communications, Inc.*,
    No. CV 08-3800 GAF (RCx),
    2010 WL 1891717 (C.D. Cal. May 10, 2010) .................................................... 8

*In re NutriSystem, Inc. Derivative Litigation*,
    666 F. Supp. 2d 501 (E.D. Pa. 2009) .............................................................. 15

*O'Reilly v. Transworld Healthcare, Inc.*,
    745 A.2d 902 (Del. Ch. 1999) ........................................................................ 16

*Perretta v. Prometheus Development Co.*,
    No. C05-02987 WHA,
    2005 WL 3445627 (N.D. Cal. Dec. 15, 2005) ................................................ 16

*Pfeiffer v. Toll*,
    989 A.2d 683 (Del. Ch. 2010) ........................................................................ 14

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) .............................................................................. 5, 7

*In re Sagent Technology, Inc., Derivative Litigation*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) .......................................................3, 18

*Shields v. Singleton*,
    15 Cal. App. 4th 1611 (1993) ............................................................................ 7

REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS

*Silva v. U.S. Bancorp*,
  No. 5:10-cv-01854-JHN-PJWx,
  2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ..................................... 10

*South v. Baker*,
  62 A.3d 1 (Del. Ch. 2012) .................................................. 6, 11, 19

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ................................................... 17

*In re Symbol Technologies Securities Litigation*,
  762 F. Supp. 510 (E.D.N.Y. 1991) ............................................. 4, 17

*In re TASER International Shareholder Derivative Litigation*,
  No. CV-05-123-PHX-SRB,
  2006 WL 687033 (D. Ariz. Mar. 17, 2006) ..................................... 16

*In re Tyson Foods, Inc. Consolidated Shareholder Litigation*,
  919 A.2d 563 (Del Ch. 2007) ............................................... 7, 9, 15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................. 15

*In re Walt Disney Co. Derivative Litigation*,
  906 A.2d 27 (Del. 2006) ........................................................ 19

*Yaw v. Talley*,
  Civ.A. No. 12882,
  1994 WL 89019 (Del. Ch. Mar. 2, 1994) ......................................... 7

*In re Zoran Corp. Derivative Litigation*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007) ......................................... 8, 21

**Statutes and Rules**

15 U.S.C. § 77q(b) (Section 17(b)) ............................................... 11

Del. Code tit. 8, § 220 ........................................................ 5, 6

Fed. R. Civ. P. 9(b) ....................................................... 1, 15, 16, 17

REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS

1

Fed. R. Civ. P. 12(b) ............................................................................... 2, 21

2

Fed. R. Civ. P. 23.1 ................................................................................. *passim*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS

# INTRODUCTION[1]

The Opposition is more telling for what it concedes than for what it contests. Plaintiffs admit that Rule 23.1 requires that demand futility be pled with particularized factual allegations and that conclusory allegations are inadequate. (Opp'n at 5.)  Yet, because Plaintiffs cannot point to particularized allegations in their Complaints, they respond in the Opposition with summaries of their conclusory, bald allegations and attempt to present them as proof that they have met the exacting pleading standard under Rule 23.1.   Repeating or summarizing conclusory statements do not result in particularized facts.

By denying that their allegations of fraud "sound in fraud" and thus must be plead under Rule 9(b), (Opp'n at 16), and pressing to be excused from pleading with particularity on the grounds that they "have not had the benefit of discovery" (*id.* at 5), Plaintiffs effectively concede that they have not and cannot plead the particularized facts necessary to bring their derivative actions on behalf of CytRx. Besides basing their Complaints on pure (and incorrect) guesswork by their counsel, Plaintiffs cannot satisfy their heightened pleading burden because they willfully disregarded the repeated judicial directive to shareholders to *first* investigate their theories by employing the "tools at hand" before rushing to the courthouse in a race to attempt to gain an advantage over other derivative plaintiffs and their counsel.  *In re Citigroup Inc. Shareholders Litig.*, 2003 WL 21384599, at *1, *3 (Del. Ch. June

---

[1]      Regarding citations, all emphasis is added, and all internal citations, quotations and alterations are omitted, unless otherwise noted.  "Motion" or "Mot." refers to the Individual Defendants' Motion To Dismiss Complaints, filed on October 20, 2014.  (ECF No. 25.)  "Opposition" or "Opp'n" refers to Plaintiffs' Memorandum in Opposition to the Individual Defendants' Motion to Dismiss Complaints, filed on November 6, 2014.  (ECF No. 35.)  Since the Motion was filed, Martin Selter, a defendant in this action, passed away.  On November 10, 2014, CytRx filed a Notice of Death pursuant to Federal Rule of Civil Procedure 25(a). (ECF No. 41.)

REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS

5, 2003).   Plaintiffs' impatience in this regard was further aggravated by their realization that other derivative plaintiffs had made books and records inspections and filed lawsuits on the same subject matter in Delaware.  But such self-interested impatience does not excuse the pleading requirements for derivative actions or allegations of fraud.

Symptomatic of the fact that they are unarmed with the necessary particularized facts specific to each director, *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), Plaintiffs concede that scienter is necessary to establish a substantial likelihood of liability for purportedly false public statements that form the basis of their breach of fiduciary duty claims (Opp'n at 12), but then must resort to praying for the Court to *infer* this necessary element.  (*Id.* at 13.)  Plaintiffs further are unable to respond with particularized allegations concerning the bald conclusions in their Complaints, including for example, whether any of the purported "spring-loaded" option grants were ever exercised by the recipient Defendants; whether any Defendants sold any shares during the alleged fraudulent "pump and dump" scheme; and whether, as merely guessed by Plaintiffs, the Defendants approved anything—much less an "illegal" business activity.  Not surprisingly, the lack of a pre-suit investigation precludes Plaintiffs from being able to plead their claims—and, as fatally revealed in their Complaints and Opposition, they cannot even explain what damages purportedly have resulted from their concocted DreamTeam fraudulent scheme.

In sum, without the necessary investigation into the purported factual basis of their Complaints, Plaintiffs' allegations unsurprisingly fail to allege any specific involvement or wrongdoing by any of the Defendants, which dooms the Complaints under Rules 23.1 and 12(b)(6).

Plaintiffs also do not meaningfully address the Complaints' numerous deficiencies nor refute Defendants' arguments that the Complaints fail to state a

2

1 claim upon which relief can be granted.  For example:

2      ■ Contrary to Plaintiffs' suggestion, because the exculpatory clause is

3 properly considered on a motion to dismiss, *In re Sagent Technologies,*

4 *Inc., Derivative Litigation*, 278 F. Supp. 2d 1079, 1095 n.9 (N.D. Cal.

5 2003), Plaintiffs cannot avoid the requirement that in order to plead a

6 breach of fiduciary duty for non-exculpated conduct, they must allege with

7 particularity "bad faith, intentional misconduct, [or a] knowing violation of

8 the law."  (Mot. at 16 n.12) (citing *In re Baxter Int'l, Inc. S'holders Litig.*,

9 654 A.2d 1268, 1270 (Del. Ch. 1995)).  They have made no such showing.

10 Additionally, Plaintiffs fail to refute the application of the business

11 judgment rule, which applies the presumption that the Directors, at all

12 times, acted "on an informed basis . . . in good faith and in the honest belief

13 that the action taken was in the best interest of the company."  *Citron v.*

14 *Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del. 1989)

15 (quoting *Aronson*, 473 A.2d at 812).

16      ■ Plaintiffs do not refute the application of the heightened pleading

17 requirements under *Caremark* for their "Breach of Fiduciary Duties for

18 Failing to Maintain Internal Controls" claim (Count II).  Plaintiffs

19 mischaracterize their allegations for "fail[ing] to make a good faith effort to

20 correct . . . problems or prevent[] its recurrence," when, under Delaware

21 law, "allegations that . . . any . . . Director, breached a general duty of

22 oversight are referred to . . . as a *Caremark* claim."  *Jones ex rel. CSK Auto*

23 *Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1335 (D. Ariz. 2007).  Indeed, in a

24 telling display of their desperate but failed attempt to avoid confronting

25 "possibly the most difficult theory in corporation law upon which a

26 plaintiff might hope to win a judgment," *In re Caremark International*

27 *Derivative Litigation*, 698 A.2d 959, 671 (Del. Ch. 1996), Plaintiffs

28 maintain they have <u>not</u> brought a *Caremark* claim for failure of oversight

3

(Opp'n at 20-21), while simultaneously describing the claim as "failing to maintain adequate internal controls." (*Id.* at 17.)

- Plaintiffs' "boilerplate language" alleging injury and damages for the claims based on the DreamTeam allegations (Counts I–V) is "not sufficient to withstand a motion to dismiss." *In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 517 (E.D.N.Y. 1991). The reason Plaintiffs cannot and do not plead what damages have resulted from their alleged DreamTeam scheme, is that there are no damages to CytRx.

- Plaintiffs acknowledge that unjust enrichment claims (Counts III and VI) exist only where Defendants' "retention of money or property . . . [goes] against the ***fundamental principles of justice or equity and good conscience***." (Opp'n at 18.) Plaintiffs have made no such allegations to support this finding, and moreover, fail in their Opposition to point to allegations directed at each of the elements of the cause of action.

- Plaintiffs have failed to refute Defendants' argument that Counts IV (Gross Mismanagement) and V (Abuse of Control) are duplicative causes of action. (*See* Mot. at 24-25.) In fact, they effectively concede that both counts are the same as the cause of action for breach of fiduciary duty. (Opp'n at 20.)

- By making no argument whatsoever, Plaintiffs have abandoned Count VII (Insider Selling and Misappropriation of Information).

For each and all of these reasons, the Complaints should be dismissed in their entirety.

REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS

# ARGUMENT

## I.   PLAINTIFFS HAVE NOT ESTABLISHED DEMAND FUTILITY

### A.   Plaintiffs' Conclusory Allegations Are Inadequate To Establish Demand Futility

Plaintiffs concede that they are required to allege facts with particularity and that conclusory allegations are inadequate to establish demand futility. (*See* Opp'n at 5 ("Plaintiffs only need to ***allege with particularity***" facts establishing demand futility); *id.* at 5 n.8 (citing *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996) (pleading requirements of Rule 23.1 not met where claim is "based on mere suspicions or stated solely in conclusory terms"), *overruled on other grounds by Brehm*, 746 A.2d 244).) Plaintiffs, however, then proceed to regurgitate conclusions unsupported by factual allegations—much less particularized facts—in an attempt to effectively convince the Court that they have met Rule 23.1's heightened pleading standard simply because they repeatedly say so. (*See, e.g.*, Opp'n at 6 ("[E]ach Demand Director knew about and approved the Dream Team contract and then caused false and misleading Company filings to be filed with the SEC.").) There are no <u>facts</u> alleged to support their conclusory propositions. *See Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007) ("cursory contentions of wrongdoing" are inadequate to meet Plaintiffs' burden). Accordingly, the Complaints must be dismissed. *See Brehm*, 746 A.2d at 254 ("Pleadings in derivative suits . . . must comply with stringent requirements of factual particularity.").

Indeed, in a tacit acknowledgement that they have not pled with particularity, Plaintiffs try to blame their failure on the fact that they "have not had the benefit of discovery." (Opp'n at 5.) As the Motion explained, Delaware courts have rejected such excuses and have repeatedly reminded derivative plaintiffs that they "have many avenues available to obtain information bearing on the subject of their claims," including the use of "section 220 as an information-gathering tool." *Rales v. Blasband*, 634 A.2d 927, 934 n.10 (Del. 1993). In fact, Delaware courts have

1  emphasized that to meet the heightened standard of pleading facts to establish

2  demand excusal, it is <u>critical</u> that shareholders <u>first</u> investigate their theories and

3  claims with the "tools at hand"—in particular, a books and records inspection. *In re*

4  *Citigroup Inc.*, 2003 WL 21384599, at *1, *3; *see also South v. Baker*, 62 A.3d 1, 6

5  (Del. Ch. 2012) ("[O]ur Supreme Court has admonished stockholders repeatedly to

6  use Section 220 of the General Corporation Law, 8 Del. C. § 220, to obtain books

7  and records and investigate their claims before filing suit."). (*See also* Mot. at 9 n.8

8  (collecting case authority).)

9       **B.    Plaintiffs Have Not Pled Facts Specific To Each Director**

10           As the Motion established, derivative plaintiffs must "plead facts ***specific to***

11  ***each director***, demonstrating that at least half of them could not have exercised

12  disinterested business judgment in responding to a demand." *Desimone*, 924 A.2d at

13  943 (emphasis in original). Plaintiffs ignore this law. Instead, they simply republish

14  the conclusory, non-specific allegation that "each Demand Director knew about and

15  approved the Dream Team contract" (Opp'n at 6), and then instruct the Court that

16  they "can and should reasonably infer that all the Demand Directors . . . knew or

17  should have known that the Dream Team stock promotion scheme was material

18  information," and that the Court "can and should" thus reasonably infer the

19  Directors' "knowing issuance and approval of false and misleading statements to

20  shareholders." (*Id.* at 13.) This argument lacks any factual support and is contrary

21  to law. *See Desimone*, 924 A.2d at 943 ("Delaware law does not permit the

22  wholesale imputation of one director's knowledge to every other for demand excusal

23  purposes.").

24       **C.    Plaintiffs Have Not And Cannot Establish Demand Futility For**
          **Each Of The Claims Alleged**
25

26           1.    Plaintiffs Fail To Plead Demand Futility For Each Claim Pled

27           "Demand futility analysis is conducted on a claim-by-claim basis." *Beam ex*

28  *rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 n.48 (Del.

6

1 Ch. 2003).  Thus, Plaintiffs must establish that demand would have been futile as to

2 each claim alleged in the Complaints.  *See Yaw v. Talley*, 1994 WL 89019, at *9

3 (Del. Ch. Mar. 2, 1994).  For each claim, Plaintiffs must establish that a majority of

4 the Directors at the time the Complaints were filed (four out of a six-person board)

5 lacked independence or was not disinterested.  *Rales*, 634 A.2d at 937.  Plaintiffs

6 have not made, and cannot make, this showing as to any claim.

        2.    <u>Plaintiffs Have Not Established That Demand Was Futile For</u>
7             <u>Claims Based On Purported "Spring-Loaded" Options</u>

8         (a)    <u>Demand Is Not Futile Based On The Receipt Of The</u>
9               <u>Option Grants</u>

10      Plaintiffs' broadly drawn conclusory allegations regarding "spring-loaded"

11 options are insufficient to establish demand futility.  (*See* Mot. at 11-12.)  Thus, the

12 mere receipt of options is not enough to establish interestedness for demand futility

13 purposes.  Instead, Plaintiffs must allege with particularity that the Directors received

14 ***unlawfully*** spring-loaded options.  *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1621

15 (1993).

16      To demonstrate that the options received by the Directors were improperly

17 spring-loaded, Plaintiffs must allege that the "options were issued according to a

18 shareholder-approved employee compensation plan," and that the Directors who

19 approved the plan "(a) possessed material non-public information soon to be released

20 that would impact the company's share price, and (b) issued those options with the

21 intent to circumvent otherwise valid shareholder-approved restrictions upon the

22 exercise price of the options."  *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919

23 A.2d 563, 593 (Del. Ch. 2007) ("*Tyson*").  But Plaintiffs have not alleged any of

24 these elements, much less with particularity.  (*See* Mot. at 13.)  Therefore, because

25 Plaintiffs have failed to establish that the options were improperly spring-loaded as a

26 threshold matter, the receipt of the options by the Directors is inadequate as a matter

27 of law to establish interestedness for the purpose of demand futility.

28      The authority Plaintiffs rely upon does not establish otherwise, and in fact,

7

1   confirms Plaintiffs' pleading inadequacies.   In *In re Zoran Corp. Derivative*

2   *Litigation*, 511 F. Supp. 2d 986 (N.D. Cal. 2007), the court found that because the

3   derivative plaintiff "pled with particularity facts that, if true, would show that a

4   majority of . . . directors received backdated stock options" and "thus . . . engaged in

5   self-dealing," those directors were "considered interested" for demand futility

6   purposes. *Id.* at 995, 1003.   However, the court acknowledged that "merely alleging

7   that options were granted at a periodic low in stock price . . . followed by a sharp

8   jump in price [is] not sufficient to plead a pattern of backdating." *Id.* at 1003 n.3

9   (citing *In re Linear Tech. Corp. Derivative Litig.*, 2006 WL 3533024, at *3 (N.D.

10  Cal. Dec. 7, 2006)).   Importantly, the *Zoran* plaintiff alleged a "statistical pattern of

11  favorable grant dates and the fact that the grant date could be chosen at the will of

12  the compensation committee." *In re Zoran Derivative Litig.*, 511 F. Supp. 2d at

13  1005.   Plaintiffs have made no such factual showing here, and thus have not alleged

14  facts to support a claim of unlawful option grants—even under *Zoran*.

15          Similarly, Plaintiffs cite *In re MRV Communications*, 2010 WL 1891717 (C.D.

16  Cal. May 10, 2010), where the court held that "[t]o decide whether Defendants were

17  disinterested, the Court ***must first determine*** whether the allegations support a

18  finding that the option grants were indeed backdated." *Id*. at *4; (Opp'n at 7); *see*

19  *also Conrad v. Blank*, 940 A.2d 28, 38 (Del. Ch. 2007) (where "[g]iven Staples's

20  November 2006 disclosure of broader 'errors' [regarding dates of historic option

21  grants], it is readily inferred that [the directors] received other mispriced options

22  [and] . . . the plaintiff's pleadings [were] adequate to raise a reasonable doubt as to

23  whether these two directors are disinterested").   Plaintiffs, however, do not and

24  cannot point to any non-conclusory, particularized facts that, if true, would show that

25  a majority of the Directors received options that were, in fact, "spring-loaded."

26  Plaintiffs have done no more than allege that the Directors received stock options in

27  line with the timing of annual grants, issued at the fair market value of the stock the

28  following day. (Mot. at 3-4; Compl. ¶¶ 39-41.)   Mere timing is not enough. *Zoran*,

1  511 F. Supp. 2d at 1005; *Tyson*, 919 A.2d at 592.  In sum, because Plaintiffs do not

2  allege that the Defendants received "spring-loaded" options, demand is not excused.

3           (b)     Demand Not Futile Based On Compensation Committee's
                    Alleged Approval Of Spring-Loaded Options
4

5           Plaintiffs ignore the clear precepts of Delaware law that require more than

6  conclusory allegations that a director is interested on the ground that he faces a

7  substantial likelihood of liability.  (*See* Mot. at 15-16.)  Instead, Plaintiffs assert in

8  conclusory terms that demand is excused because "the Compensation Committee

9  members . . . face a substantial likelihood of liability because they awarded those

10  options." (Opp'n at 8.)

11          *Tyson* acknowledged that granting "spring-loaded" stock options is not *per se*

12  unlawful.  *Tyson*, 919 A.2d at 592 ("Whether a board of directors may in good faith

13  grant spring-loaded options is a somewhat more difficult question than that . . . posed

14  by options backdating, a practice that . . . involve[s] a fundamental, incontrovertible

15  lie.").  Indeed, "[a] severe test faces those seeking to overcome the presumption" that

16  the grant is protected by the business judgment rule.  *Id.*   Thus, approving or

17  administering the options does not *de facto* create a "substantial likelihood of

18  liability."  *See id.*

19          Instead, Plaintiffs must allege with particularity that "options . . . issued

20  according to a shareholder-approved employee compensation plan" were approved

21  by directors who "(a) possessed material non-public information soon to be released

22  that would impact the company's share price, and (b) issued those options with the

23  intent to circumvent otherwise valid shareholder-approved restrictions upon the

24  exercise price of the options."  *Id.* at 593; *see also Edmonds v. Getty*, 524 F. Supp. 2d

25  1267, 1276-77 (W.D. Wash. 2007) (allegations that compensation committee "knew

26  that backdating grants . . . violated the 1998 stock plan" and "falsely represented to

27  shareholders that the company was complying with the plan" sufficient at pleading

28  stage); *Engel v. Sexton*, 2009 WL 361108, at * 6 (E.D. La. Feb. 11, 2009)

1  (reasonable doubt as to disinterested business judgment where committee members
2  "conducted the review that uncovered the 'issues' regarding the option grants, but
3  made no demand for repayment of profits realized through backdated options").

4        The Complaints are wholly devoid of such allegations.  In the Opposition,
5  Plaintiffs do not and cannot point to any particularized facts showing that the
6  Compensation Committee knowingly and intentionally approved unlawful "spring-
7  loaded" options.  Plaintiffs merely allege that the "four defendants approved the
8  grant of stock options," and that the option grants "were to vest immediately while
9  the strike price was set to the Company's closing stock price the next day."  (Compl.
10  ¶ 39.)  In fact, as addressed in the Motion, Plaintiffs concede that the grants were
11  made in line with historic grants, and continue to resort to asking the Court to "infer"
12  that Defendants timed a favorable release to occur after the grants were issued.
13  (Mot. at 7; Opp'n at 9 ("[I]t is reasonable to infer that these grants were deliberately
14  timed.").)  Such conclusory allegations are plainly inadequate under the law.  *See In
15  re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 927 (N.D. Cal.
16  2010).

17           3.  <u>Plaintiffs Have Not Established That Demand Was Futile For</u>
18  <u>Their DreamTeam-Related Allegations</u>

19        Plaintiffs do not challenge Defendants' argument that none of the Directors
20  was on both sides of any DreamTeam transaction, or received a personal financial
21  benefit therefrom.  (*See* Mot. at 15.)  Thus they have waived this argument.  *See*
22  *Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he
23  Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to
24  address Defendants' arguments in his Opposition."); *Hopkins v. Women's Div., Gen.*
25  *Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("[W]hen a
26  plaintiff files an opposition to a motion to dismiss addressing only certain arguments
27  raised by the defendant, a court may treat those arguments that the plaintiff failed to
28  address as conceded.").  Instead, Plaintiffs only repeat their conclusory mantra that

1   the Directors "face a substantial likelihood of liability."   (Opp'n at 8.)   These

2   arguments fail.

3                  (a)   <u>Plaintiffs Have Failed To Demonstrate Substantial</u>
                        <u>Likelihood Of Liability For "Adoption Or Tacit Approval</u>
4                       <u>Of An Illegal Business Strategy"</u>

5        Plaintiffs attempt to dodge the standard for oversight liability established in

6   *Caremark* by layering conclusory allegations on what is essentially an allegation of

7   inaction.   (*See, e.g.*, Opp'n at 10 (The directors' "approval of the illicit stock

8   promotion scheme . . . was not a protected business judgment."); *id.* at 11 ("[T]he

9   Board affirmatively adopted, implemented, and condoned a business strategy which

10  had the effect of deliberately violating the law.").)   Moreover, allegations based on

11  *inaction* cannot be restyled as a *conscious decision* not to act.   *See In re Intel Corp.*

12  *Derivative Litig.*, 621 F. Supp. 2d 165, 173 (D. Del. 2009) (characterizing allegation

13  that the directors made a "decision not to act" in bad faith as a *Caremark* claim); *see*

14  *also Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) (noting that *Caremark*

15  premises director "liability on a showing that the directors were *conscious* of the fact

16  that they were not doing their jobs").   As the Motion established, Plaintiffs do not

17  and cannot allege "with particularity actual director involvement in a decision or

18  series of decisions that violated positive law." (Mot. at 17-18); *South*, 62 A.3d at 15.

19       Plaintiffs argue that Defendants "deliberately violat[ed] the law regarding

20  disclosure of material information" through a violation of Section 17(b) of the

21  Securities Act prohibiting "the publicizing of a security for payment unless the

22  nature, amount and source of the compensation is disclosed." (Opp'n at 11.) As a

23  matter of law, however, Defendants had no duty to disclose any retention and

24  payment of promotional firms or analysts, and thus were not in violation of

25  Section 17(b). *See Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 83 (D. Mass. 2005).

26  *Garvey* involved nearly identical claims of disclosure omissions by the publishers

27  under the federal securities law. The *Garvey* plaintiffs claimed that medical

28  equipment manufacturer Diomed and its chairman "devised a plan to artificially

                                        11

1  inflate the price of Diomed's stock by secretly paying stock analysts to tout Diomed

2  to unsuspecting investors," citing articles published in four stock newsletters.  *Id.* at

3  76.  The *Garvey* plaintiffs alleged that the "stock promotions were clandestinely

4  instigated" by the defendants via a "go-between" promotional firm, Catalyst

5  Communications, based on, *inter alia*, an article reporting that an author "told Dow

6  Jones Newswire that he was approached by Diomed and by Catalyst to write his

7  bullish February report on the company" and that Catalyst paid him.  *Id.* at 76-78.

8       The *Garvey* court dismissed the claims, holding that neither of the defendants

9  had to disclose that they paid analysts to write positive articles about the company:

10             It may seem odd to the uninitiated, but nothing in the

11             securities laws bars the issuer of a regulated security from

12             paying an analyst for a stock recommendation.  Rather, the

13             approach taken by the securities laws—in practical

14             recognition of the fact that most market research is

15             performed by analysts who are paid by brokerage firms,

16             investment banks, and other marketers of securities—is to

17             require disclosure of the fact that the analyst has been

18             paid. . . . [T]he burden to disclose rests on the person who

19             *publishes* the analyst's report; by contrast, there is no duty

20             imposed . . . on the *issuer* who has paid for the puffery.

21             Thus, in the absence of a duty on the part of the defendants

22             to disclose the payments at issue, the plaintiffs' claims fail.

23  *Id.* at 83 (emphasis in original).

24       The *Garvey* court also stated that "sufficient ground[s]" for dismissal existed

25  because the plaintiffs did not sufficiently plead a connection between Diomed and

26  "secret funneling of bribes to the stock analysts," where the allegations were "based

27  for the most part on third party quotes extracted from newspaper articles," so that the

28  complaint was "bereft of specific statements or acts attributed to the defendants as

1   opposed to generalities and hearsay-derived speculation." *Id.* at 82.

2   Plaintiffs' allegations not only lack the specificity required by Rule 23.1 and

3   fail to allege any scienter, they are also based on two bloggers' speculation about

4   DreamTeam's misconduct.  (*See* Compl. ¶¶ 31-32.)  Thus, because they allege no

5   "specific statements or acts ***attributed to the defendants*** as opposed to generalities

6   and hearsay-derived speculation," *Garvey*, 354 F. Supp. 2d at 82, no substantial

7   likelihood of liability has been shown by Plaintiffs.

8                    (b)    Plaintiffs Have Failed To Demonstrate Substantial
9                           Likelihood Of Liability For Purportedly False SEC Filings

10   As explained in the Motion, Plaintiffs did not plead facts with the required

11   particularity relating to the purportedly false SEC filings.  (Mot. at 17.)

12   In response, Plaintiffs merely assert that the Defendants were "obligated" to

13   "review and approve earnings press releases, as well as the Company's financial

14   statements."   (Opp'n at 12.)   Moreover, recognizing the deficiency of their

15   Complaints, Plaintiffs now seek to rely on allegations from the securities class action

16   pending in this Court that purportedly allege that "every Demand Director signed the

17   Registration Statement on Form S-3 which failed to disclose the Dream Team stock

18   promotion scheme."  (*Id.*)  These allegations cannot be considered by the Court, but,

19   regardless, are insufficient to establish liability related to the filings.  *See In re*

20   *Accuray*, 757 F. Supp. 2d at 928; *see also In re Bidz.com, Inc. Derivative Litig.*, 773

21   F. Supp. 2d 844, 859 n.10 (C.D. Cal. 2011) (dismissing demand where "to impose

22   liability on these directors, their actions must be marked by knowledge or bad faith,

23   neither of which are alleged with respect to the false statements" and where the

24   plaintiffs did not allege "particularized facts indicating that the Outside Directors had

25   knowledge about shill bidding . . . they could not 'knowingly' fail to disclose that

26   fact").

27   Further, Plaintiffs concede that scienter is necessary to establish a substantial

28   likelihood of liability relating to the purportedly false public statements.  (*See, e.g.*,

13

1  Opp'n at 12 ("Directors who **knowingly** issue false and misleading statements to

2  shareholders 'may be considered to be interested for purposes of demand.'").)

3  Nonetheless, Plaintiffs do not—and cannot—point to any allegations in the

4  Complaints that establish that any of the Defendants **knew** the statements at issue

5  were false or misleading.  Instead, Plaintiffs instruct the Court to "**infer** that all the

6  Demand Directors . . . knew or should have known that the Dream Team stock

7  promotion scheme was material information," and to infer the "Demand Directors'

8  knowing issuance and approval of false and misleading statements to shareholders."

9  (Opp'n at 13.)  Plaintiffs cite no authority that such an "inference" is permissible.  In

10  *Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010), members of the Toll Brothers board

11  of directors faced allegations for insider trading "while in possession of material,

12  non-public information about Toll Brothers' future prospects."  *Id.* at 683.  The

13  defendants repeatedly issued statements to assure investors that no "housing bubble"

14  existed and "**represented** that the Company was uniquely positioned to weather any

15  problems that might occur."  *Id.* at 686.  *Pfeiffer* does not hold that a court can infer

16  directors' knowledge of a misstatement absent allegations of scienter.   To the

17  contrary, *Pfeiffer* itself involved allegations that "the defendants knew their

18  representations . . . had no reasonable basis in fact" and "knew [downward earnings]

19  trends well before they reduced their projections."  *Id.* at 689.  Here, Plaintiffs make

20  no allegations even approaching scienter.

21       Plaintiffs' argument that membership on the Audit Committee is sufficient

22  finds no support under the law.  (Opp'n at 12-13.)  For example, in *Jones ex rel. CSK*

23  *Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325 (D. Ariz. 2007), the court found that

24  demand was not futile under Delaware law where the plaintiff alleged that the

25  members of the Audit Committee were not disinterested on the ground that, as

26  members of the committee, they necessarily "participated in [the corporation's]

27  wrongdoing," and had failed to exercise oversight.  *Id.* at 1334.  The court rejected

28  this argument as "entirely conclusory" and held that "[m]embership on an Audit

14

1 Committee does not alone render directors personally liable and therefore too

2 interested to consider a shareholder's demand." *Id.*

3      Plaintiffs put forth no allegations that meet their burden in establishing a

4 substantial likelihood of liability for any director relating to the SEC filings.   As

5 such, Plaintiffs have failed to establish demand futility for these allegations.

6      **D.**    **Messrs. Kriegsman And Rubinfeld Do Not Lack Independence**

7      As set forth in the Motion, "[u]nder Delaware law, merely being employed by

8 a corporation is not, by itself, sufficient to create a reasonable doubt as to the

9 independence of a director." *In re NutriSystem, Inc. Derivative Litig.*, 666 F. Supp.

10 2d 501, 515 (E.D. Pa. 2009).   The cases cited by Plaintiffs do not establish that

11 Mr. Kriegsman, as CEO, and Mr. Rubinfeld, as a consultant, are *de facto* disabled

12 from considering a demand made against the company.   (Opp'n at 14-15.)   Indeed,

13 the cases illustrate the high threshold necessary to establish a lack of independence

14 of an officer-director,[2] which Plaintiffs do not meet.

15 **II.**    **PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR RELIEF**

16      **A.**    **Plaintiffs' Claims Necessarily Sound In Fraud And Do Not Meet**
17            **The Heightened Pleading Requirements Of Rule 9(b)**

18      As demonstrated in the Motion, the Complaints allege "a unified fraudulent

19 course of conduct" and therefore must be pled with particularity pursuant to the more

20 stringent pleading standard under Rule 9(b).   (*See* Mot. at 20-21); *see also Vess v.*

21 

_____

22 [2]    *See, e.g.*, *Tyson*, 919 A.2d at 581-82 (plaintiff must plead facts that illustrate
23 that an employee-director is "dominated through a close personal or familial
relationship or through force of will or is so beholden to an interested director that
24 his or her discretion would be sterilized"); *Mizel v. Connelly*, 1999 WL 550369, at
*1-3 (Del. Ch. July 22, 1999) ("clearly-interested" director was Chairman, CEO and
25 largest stockholder, as well as served as  the "management superior" of two
employee-directors, and was the grandfather of one of them); *In re Cooper Co.*, 2000
26 WL 1664167, at *6 (Del. Ch. Oct. 31, 2000) (reasonable doubt of independence of
two officer-directors over whom another decidedly interested director exercised
27 "considerable influence" as their corporate superior and who absented themselves
from an emergency meeting related to the wrongdoing of that corporate superior).

28

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).  In short, Plaintiffs claim that Defendants executed an extensive "scheme" by "secretly hiring" DreamTeam to engage in a "precisely" timed, "coordinated" and "misleading" campaign designed to boost the Company's stock price" as CytRx sold and issued shares.  (Compl. ¶¶ 3, 5, 32.)  These claims "sound in fraud" and accordingly are subject to a heightened pleading standard.  *See Perretta v. Prometheus Dev. Co.*, 2005 WL 3445627, at *4 (N.D. Cal. Dec. 15, 2005).

Plaintiffs cannot show their allegations do not sound in fraud.  (Opp'n at 16.) Instead, they wrongly assert, without supporting legal authority, that this Court need not apply Rule 9(b) because Delaware pleading standards satisfy the Rule's requirements.  (*Id.* at 17.)  Yet, even the case that Plaintiffs rely upon emphasizes "Delaware's ***permissive pleading standard***," and still confirms that the Court may "disregard mere conclusory allegations made without specific allegations of fact to support them."  *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 912 (Del. Ch. 1999).[3]

Furthermore, Plaintiffs' reliance on *In re TASER Int'l S'holder Derivative Litigation*, 2006 WL 687033 (D. Ariz. Mar. 17, 2006), is misplaced.  The *TASER* court applied Rule 9(b) to a complaint alleging a "unified course of fraudulent conduct."  *Id.* at *14-16.  The *TASER* plaintiffs' allegations actually mirror Plaintiffs' allegations here: that the defendants breached their fiduciary duties of care, loyalty and good faith by "causing or allowing the Company to disseminate to the Market materially misleading and inaccurate information through public statements, including, but not limited to, press releases and SEC filings."  *Id.* at *14.  Thus, *TASER* does not allow Plaintiffs to avoid Rule 9(b).

---

[3]     Plaintiffs also concede that pursuant to this standard, they must "plead causation and quantifiable damages."  (Opp'n at 16.)  As the Motion established, Plaintiffs have sufficiently pled neither.  (Mot. at 21-22.)

1   The Motion showed that Plaintiffs are required to comply with Rule 9(b) and
2   that Plaintiffs have failed to satisfy that standard.  (Mot. at 20-21); *see also Swartz v.*
3   *KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a
4   complaint to merely lump multiple defendants together but requires plaintiffs to
5   differentiate their allegations when suing more than one defendant and inform each
6   defendant separately of the allegations surrounding his alleged participation in the
7   fraud.").   Plaintiffs must identify "the who, what, when, where, and how of the
8   misconduct charged," as well as "what is false or misleading about the purportedly
9   fraudulent statement, and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
10  637 F.3d 1047, 1055 (9th Cir. 2011).  The Complaints utterly fail to do so.

11
12  **B.   Plaintiffs Have Not Alleged Damages For The DreamTeam-Related**
         **Causes Of Action (Counts I, II, III, IV, V)**

13      As Defendants already showed regarding damages, Plaintiffs' "boilerplate
14  language is not sufficient to withstand a motion to dismiss."  (Mot. at 22 (citing *In re*
15  *Symbol Techs. Sec. Litig.*, 762 F. Supp. at 517).)  Plaintiffs assert that the Complaints
16  "plead[] the requisite causation and damages" for their DreamTeam-related causes of
17  action (Opp'n at 18-19), but only regurgitate their conclusory allegations that CytRx
18  "has been damaged" (*see, e.g.*, Compl. ¶¶ 45, 69, 83).  Plaintiffs assert that CytRx's
19  stock "fell to a close of $4.17 per share on March 13, 2014" (*id.* ¶ 9), yet fail to
20  allege whether and how <u>CytRx</u> suffered harm as a result.  Nor do Plaintiffs allege
21  any causal link between the conduct alleged and the closing share price in the
22  "Relevant Period."  (*See Id.* ¶ 1.)  Moreover, while Plaintiffs extol the "substantial
23  investigative costs" (Opp'n at 18), these damages are not even alleged in the
24  Complaints.

25      Plaintiffs still have not demonstrated, nor can they, the damages claimed and
26  the extent of those damages.   As a matter of law, their boilerplate assertions
27  regarding damages cannot withstand a motion to dismiss.  (Mot. at 21-22.)

28

1

**C.      Plaintiffs Still Fail To State A Claim For Breach Of Fiduciary Duty**

2

1.      Plaintiffs Do Not Plead Around The Exculpatory Clause

3          Contrary to Plaintiffs' suggestion (Opp'n at 21-22), an exculpatory clause is

4   properly considered on a motion to dismiss.  *In re Sagent Tech., Inc., Derivative*

5   *Litig.*, 278 F. Supp. at 1095 n.9 ("Contrary to plaintiffs' argument, it is not improper

6   for the court to consider the effect of a § 102(b)(7) exculpatory provision on a

7   12(b)(6) motion to dismiss."); *In re Bidz.com, Inc. Derivative Litig.*, 773 F. Supp. 2d

8   at 855 (granting motion to dismiss where plaintiffs failed to plead around

9   exculpatory clause through proper "allegations that the Directors intended to breach

10  their fiduciary duties or acted with a 'conscious disregard' toward their fiduciary

11  duties"); *In re MIPS Techs., Inc. Derivative Litig.*, 2008 WL 3823726, at *4, *9

12  (N.D. Cal. Aug. 13, 2008) (granting motion to dismiss for failure to "plead

13  particularized facts alleging a non-exculpated claim against the directors").  As set

14  forth in the Motion, but unchallenged by Plaintiffs, the Complaints do not plead the

15  particularized allegations that establish that any Director's actions were "so

16  egregious" so as to constitute "bad faith, intentional misconduct, or a knowing

17  violation of the law.  (Mot. at 15-16 & n.11.)

18

2.      Count I Fails To State a Claim

19         For their claim of disseminating false and misleading information (Count I)

20  Plaintiffs must plead particularized facts that demonstrate that the Defendants acted

21  with scienter.  (*See id.* at 15 n.12.)  Far from demonstrating the requisite state of

22  mind, Plaintiffs instead rely on authority which does not address the scope of

23  liability under an exculpatory clause.  *Grobow v. Perot*, 526 A.2d 914 (Del. Ch.

24  1987), for example, did not address scienter or a governing exculpatory clause, and,

25  moreover, still granted the defendants' motion to dismiss for failure to plead demand

26  futility.

27         Plaintiffs fail to plead particularized facts that any of the Defendants had

28  knowledge regarding the purported "disseminati[on] [of] false and misleading

18

1  information," and thus "enter[ed] into an illicit, undisclosed contract with Dream

2  Team for the promotion of CytRx's stock," or "arrang[ed] for [stock options] to

3  immediately be 'in the money.'" (Opp'n at 17-18.) Thus, their claims for breaches

4  of fiduciary duties based on these allegations fail. (*See* Mot. at 22-23.)

5              3.   Count II Fails To State A Claim

6        For their claim of failing to maintain internal controls (Count II), Plaintiffs

7  grossly mischaracterize their claim to circumvent the proper application of the

8  *Caremark* standard. (Opp'n at 20-21.) Plaintiffs' claim that Defendants willfully

9  ignored "internal controls . . . practices and procedures" and failed to "correct these

10  problems or prevent their recurrence" (Compl. ¶ 72), is a classic *Caremark* claim.

11  *See Jones*, 503 F. Supp. 2d at 1335 (under Delaware law, "allegations that . . .

12  any . . . Director, breached a general duty of oversight are referred to in Delaware as

13  a *Caremark* claim").

14        Thus, as Defendants demonstrated in their Motion, for the claim to survive,

15  Plaintiffs must allege (i) "actual director involvement in a decision or series of

16  decisions that violated positive law"; (ii) "that the board consciously failed to act

17  after learning about evidence of illegality—the proverbial 'red flag'"; or (iii) breach

18  of "the board's obligation to adopt internal information and reporting systems."

19  *South*, 62 A.3d at 14-15. The allegations must support a showing of "bad faith"

20  conduct, which under Delaware law requires an "intentional dereliction of duty, a

21  conscious disregard for one's responsibilities," or an intent to harm the company.

22  *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 66-67 (Del. 2006).

23        Plaintiffs have not done so. Instead, Plaintiffs' claims rest on bare allegations

24  that the Directors "caused the above-discussed internal control failures" and "caused

25  or allowed the above referenced breaches of the Company's Code of Conduct."

26  (Compl. ¶ 65.) Moreover, Plaintiffs' conclusory argument that they have "clearly

27  and succinctly" alleged "*who* failed to engage in the corporate oversight" and "*what*

28  they did wrong" (Opp'n at 21) does not meet this steep pleading burden. *See Harold*

19

1   *Grill 2 IRA v. Chênevert*, 2013 WL 3014120, at *3 (Del. Ch. June 18, 2013)

2   (dismissing derivative complaint for failure to state a claim where "complaint [was]

3   largely devoid of any attempt to plead facts connecting the directors" to the bad

4   conduct alleged).

5       Plaintiffs' Complaints make no such allegations.  Thus, their *Caremark* claim

6   must fail.

7       **D.   Plaintiffs Fail To Allege Unjust Enrichment (Counts III And VI)**

8       Plaintiffs acknowledge that a claim lies for unjust enrichment only when the

9   defendants' "retention of money or property . . . [goes] against the ***fundamental***

10  ***principles of justice or equity and good conscience***."  (Opp'n at 18.)   They

11  acknowledge that the remedy they seek is reserved for such instances where "it

12  would be ***unconscionable*** to allow [the defendants] to retain that benefit."  (*Id.*)  Yet

13  Plaintiffs do not plead these requirements , and thus repeat their unsubstantiated

14  assertion that "Defendants unjustly received compensation as a result of awarding

15  spring-loaded stock options to themselves."  (*Id.* at 19.)   However, Plaintiffs also

16  have made ***no allegations*** that the value of the work performed by Defendants was

17  less than the value of the compensation received.  As set forth in the Motion, and

18  which goes unaddressed in the Opposition, Plaintiffs also have not pled the elements

19  of the cause of action.  Thus, their claims for unjust enrichment fail.[4]  (Mot. at 23-

20  24.)

21      **E.   Plaintiffs Fail To Allege Gross Mismanagement And Abuse Of**
22          **Control (Counts IV And V)**

23      Defendants explained in their Motion that claims for "Abuse of Control" and

24  "Gross Mismanagement" are not independent claims as they are "considered a

25  ──────────────────

26  [4]      Plaintiffs ignore, and thus concede, Defendants' argument that because the
    compensation of Messrs. Kriegsman and Rubinfeld is provided by agreement, there
27  is an adequate remedy at law and no claim for unjust enrichment lies.  (Mot. at 24
    n.18.)

28

1  repackaging of claims for breach of fiduciary duties instead of being a separate tort."

2  (Mot. at 24 (citing *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d at 1019).)

3  Plaintiffs concede this point by arguing that the gross mismanagement and abuse of

4  control claims rely on the same allegations used to support "Plaintiffs' fiduciary duty

5  claims." (Opp'n at 20.)  Thus, under Delaware law, these claims are not cognizable

6  causes of action and fail. (*See* Mot. at 24-25.)

7  **F.   Count VII Is Abandoned**

8  Plaintiffs do not contest Defendants' motion to dismiss Count VII for failure

9  to state a claim for insider selling and misappropriation of information, and have thus

10  abandoned this claim. *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203,

11  1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in

12  opposition, the claim is deemed waived."), *aff'd*, 646 F.3d 1240 (9th Cir. 2011).

13  **CONCLUSION**

14  For the foregoing reasons, Defendants request that this Court dismiss this

15  action for failure to make demand pursuant to Rule 23.1, for improper venue under

16  Rule 12(b)(3), and for failure to state a claim pursuant to Rule 12(b)(6).

17

18  DATED:  November 20, 2014      SKADDEN, ARPS, SLATE, MEAGHER &
                                    FLOM LLP
19

20

21                                 By:  _____/s/ *Thomas J. Nolan*_____
                                         Thomas J. Nolan
22                                  *Attorneys for Defendants and Nominal Defendant*

23

24

25

26

27

28

REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS COMPLAINTS