*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** CytRx's Motion to Dismiss Complaints Pursuant to Rules 12(b)(3) and 23.1 or, In the Alternative, Motion to Stay [Dkt. 24]

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.    Procedural and Factual Background**

Nominal Defendant CytRx is a biopharmaceutical research and development company, incorporated in Delaware and headquartered in Los Angeles, California. (Compl.[1] at ¶¶ 2, 15.) Plaintiffs Jared Pankratz and Jack Taylor ("Plaintiffs"), citizens of Minnesota and Georgia, filed this action on August 14, 2014. [Dkt. 1.] They are current CytRx shareholders who bring this derivative suit against current and former directors Stephen A. Kriegsman ("Kriegsman"), John Y. Caloz ("Caloz"), Max E. Link ("Link"), Marvin R. Selter ("Selter"), Louis J. Ignarro ("Ignarro"), Joseph Rubinfeld ("Rubinfeld"), and Richard L. Wennekamp ("Wennekamp") (collectively, "Defendants") for: (1) breach of fiduciary duties; (2) unjust enrichment; (3) gross mismanagement; (4) abuse of control; and (5) insider selling and misappropriation of information.[2] (*Id.* at ¶ 15.) Plaintiffs did not make any pre-suit demands on the Board and instead allege demand futility. (*Id.* at ¶¶ 46-65.) In the instant Motion, CytRx seeks to either stay this action or dismiss it under Federal Rules of Civil Procedure

---

[1] Plaintiffs' suits were consolidated on October 8, 2014. [*See* Dkt. 18.] Plaintiffs ultimately plan to either file a Consolidated Complaint or designate one of their Complaints as the operative Complaint. [*See* Dkt. 17.] Plaintiffs treat the Pankratz Complaint as the operative Complaint for the purposes of this Motion. (*See* Opp'n at 5 n.9 (stating that "[u]nless otherwise noted, all paragraph citations are to plaintiff Pankratz's Verified Shareholder Derivative Complaint (the 'Complaint')" and including only one reference to Taylor's Complaint to establish his stock purchase date).)

[2] This last claim is alleged only against Defendants Link, Selter, Rubinfeld, and Wennekamp who served on CytRx's Compensation Committee.

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

12(b)(3) or 23.1.[3]  Defendants have filed a separate Motion to Dismiss under Rule 12(b)(6), which CytRx does not join. (Mot. at 14 n.8.)

On December 8, 2014, we ordered the Parties to submit additional briefing regarding whether the factors articulated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976) support CytRx's Motion to Stay this action in favor of related Delaware derivative litigation. [Dkt. 46.]

### A.   Plaintiffs' Substantive Allegations

Plaintiffs allege that Defendants hired DreamTeam Group ("DreamTeam") to promote company stock via a series of "misleading articles and comments on investor websites (such as SeekingAlpha.com), touting the supposed strength of CytRx and its products." (Compl. at ¶ 3.) These thirteen articles, published from November 2013 to March 2014, did not disclose that they were paid promotions or were approved and edited by CytRx's management. (*Id.* at ¶¶ 3, 33.) DreamTeam's articles allegedly caused CytRx's stock price to rise from $2.27/share in November 2013 to $7.98/share in January 2014. (*Id.* at ¶ 36.) On March 13, 2014, Richard Pearson, an activist investor and securities blogger, published an article on SeekingAlpha.com stating that he was solicited by DreamTeam to write paid promotional articles regarding CytRx and describing his investigation into CytRx management's involvement in the scheme. (*Id.* at ¶¶ 31-32.) CytRx's stock fell to $4.17/share the day after Pearson's article came out. (*Id.* at ¶ 9.) The thirteen articles regarding CytRx were removed from various websites. (*Id.* at ¶ 32.) Plaintiffs claim that Defendants' DreamTeam affiliation was a "textbook . . . 'pump and dump' scheme" that "attempt[ed] to boost the price of a stock through recommendations based on false, misleading or greatly exaggerated statements." (*Id.* at ¶ 34.) Defendants did not actually sell their personal shares, but as part of this alleged scheme, they caused the Company to conduct a public stock offering in January 2014 that capitalized on CytRx's artificially inflated stock price. (*Id.* at ¶ 35.)

Plaintiffs also allege Defendants are liable for approving "spring-loaded" stock option grants on December 9, 2013. (*Id.* at ¶ 39.) These grants took place two days before CytRx issued a press release regarding positive research results for one of its drug products. (*Id.* at ¶ 40.) Over the trading week following this release, the company's stock price increased by over 127%. (*Id.*) Plaintiffs claim that Defendants deliberately timed the release of this positive information to ensure a low strike price for

---

[3] CytRx requests that we take judicial notice of nine documents—two SEC filings and seven public court documents. [Dkt. 26.] We **GRANT** CytRx's requests, as SEC filings and court records are generally appropriate for judicial notice, and Plaintiffs do not object. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (concluding that a court may take judicial notice of records in another case); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 758 (N.D. Cal. 1997) (holding "a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned") (citation omitted).

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

themselves, in turn leading to a total of $3 million in stock options for CytRx's non-employee directors. (*Id.* at ¶¶ 39-40.)

### B. Related Actions

#### 1. Delaware Derivative Suits

Three other derivative actions were filed in Delaware Chancery Court, the earliest of which was filed July 8, 2014. (*See* RJN, Ex. 8.) These actions were consolidated as *In re CytRx Corp. Stockholder Deriv. Litig.*, C.A. No. 9864-VCL, and the plaintiffs filed their Consolidated Derivative Complaint on October 9, 2014. (RJN, Ex. 9.) The Delaware derivative suit includes six of the Defendants named here,[4] plus three additional corporate executives. The suit's allegations are also similar, as the plaintiffs are bringing suit to "remedy defendants' wrongful conduct of: (a) granting themselves spring-loaded stock options so as to benefit personally from the timing and pricing of the options grants; and (b) secretly engaging a stock promotion firm, the DreamTeamGroup ('DreamTeam'), to publish misleading articles touting the Company's prospects . . . prior to a February 2014 public stock offering by CytRx." (*Id.* at ¶ 1.) The Delaware plaintiffs assert the following claims based on the defendants' alleged spring-loaded stock option awards: (1) breach of fiduciary duty; (2) waste of corporate assets; and (3) unjust enrichment. They also allege demand futility based on the defendants' receipt of spring-loaded stock options and involvement in the DreamTeam promotional scheme. (*Id.* at ¶¶ 84-98.)

#### 2. Class Actions

On June 13, 2014, we consolidated three securities class actions filed in our court after Pearson's article. [14-cv-1956-GHK (PJWx) Dkt. 46.] On October 1, 2014, the plaintiffs filed a consolidated class action complaint entitled *In Re CytRx Corporation Securities Litigation*. The plaintiffs assert claims for: (1) violation of Rule 10b-5 and (2) violations of §§ 11, 12(a)(2), 15, and 20(a)-(b) of the Securities Exchange Act of 1934. All of these claims are based on the same basic underlying facts as the instant action, including the DreamTeam paid promotional scheme, the company's secondary offering, and Defendants' alleged spring-loaded stock option awards. [*See* 14-cv-1956-GHK (PJWx) Dkt. 75.]

On April 3, 2014, a plaintiff also filed a state securities class action suit in Los Angeles County Superior Court based on the same alleged misconduct. (*See Rajasekaran v. CytRx Corp. et al.*, Case No. BC 541426, RJN Ex. 5.) Defendants removed this case to our court, but we remanded it on August 21, 2014. [14-cv-3406-GHK (PJWx) Dkt. 38.] The Parties in the state court action have stipulated to staying proceedings pending our resolution of dispositive motions in *In Re CytRx Corporation Securities Litigation*. (*See* RJN, Ex. 6.)

---

[4] The Delaware suit does not name Defendant Max Link, who died in early October. [*See* Dkt. 23.]

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

### C. CytRx's Forum Selection Bylaw

On July 11, 2013, the CytRx Board adopted the following forum selection bylaw that sets Delaware state court as the exclusive forum for shareholder derivative suits:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the corporation, (ii) any action asserting a claim for breach of a fiduciary duty owed by any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, the certificate of incorporation or the by-laws of the corporation or (iv) any action asserting a claim governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the corporation shall be deemed to have notice of and consented to the provisions of this Section. (RJN, Ex. 1, Art. VIII.)

CytRx's certificate of incorporation allows the Board to unilaterally "adopt, amend, or repeal" bylaws. (RJN, Ex. 2, Art. IX, § 2.)

## II. Legal Standard

Federal courts are authorized to dismiss or stay an action "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colorado River*, 424 U.S. at 818). The Ninth Circuit "recognize[s] eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). Such abstention is only proper in "exceptional" circumstances. The balance of these factors is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

## III. Analysis

### A. Whether the State Court Proceedings Will Resolve All Issues Before Us

"As a threshold matter to the *Colorado River* test, the Court must determine whether the federal and state actions are sufficiently parallel." *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1170 (internal quotation marks removed). "Exact parallelism . . . is not required. It is enough if

Case 2:14-cv-06414-GHK-PJW   Document 50   Filed 01/08/15   Page 5 of 8   Page ID #:673

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

the two proceedings are 'substantially similar.'" *Nakash v. Marciano*, 882 F.2d 1411, 1416-17 (9th Cir. 1989). "[T]he requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties' claims." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.4 (9th Cir. 1994) (citation omitted). "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Id.* at 913.

Plaintiffs argue that a stay is unwarranted because the Delaware suit involves "different parties, different claims, and different relevant periods of alleged wrongdoing." (Pls.' Supp. Br. at 3.) We disagree. First, the Delaware suit includes all of the Defendants named here, save one—Defendant Max Link who died in early October 2014.[5] [*See* Dkt. 23.] Plaintiffs argue that because the Delaware suit names three additional defendants the suits are insufficiently parallel. But, the fact that the Delaware suit will offer more relief than this action does not convince us that it will not resolve all issues regarding the Defendants named here. *Cf. Nakash*, 882 F.2d at 1416-17 (rejecting the plaintiff's argument that the parties were not identical when "the federal action [was] but a 'spin-off' of more comprehensive state litigation" that included all named federal defendants); *see also Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (finding that the "presence of . . . four additional defendants" did not "render the[] lawsuits non-parallel"). Moreover, even though both actions involve different representative plaintiffs, because they are derivative suits, they both have the same real party in interest. *Cf. Clark*, 376 F.3d at 686 ("Sears is the true party in interest in both cases. As such, we consider only Sears' interests, not the individual interests of the plaintiffs who brought the actions on Sears' behalf.").

Second, as Cytrx's "comparative review" chart[6] demonstrates, the suits are based on allegations of the same underlying misconduct: Defendants' spring-loaded stock options and the DreamTeam stock promotion scheme and subsequent secondary offering. (*See* Cytrx's Supp. Br. at 3-5 (identifying, with supporting citations, substantial similarities in underlying misconduct alleged and relief requested in each suit).) Third, the suits are based on substantially similar claims. While the instant suit includes three nominally different counts—"gross mismanagement," "abuse of control," and "insider selling and misappropriation of information"—these claims are premised on Defendants' alleged breach of their fiduciary duties and there is little doubt that "in resolving the fiduciary duty issue, the state litigation will dispose of all claims presented in this case." *See Clark*, 376 F.3d at 686-87 (discussing the plaintiff's federal abuse of control, gross mismanagement, and waste of corporate assets claims). In other words, "the parallel nature of the actions cannot . . . be dispelled by repackaging the same issue under different causes of action." *Id.*; *Bushansky v. Armacost*, 2012 WL 3276937, at *6 (N.D. Cal. Aug. 9, 2012) (rejecting the plaintiff's arguments regarding "straw distinctions" and "repackaged" claims and finding that suits were parallel when they contained identical "underlying legal issues").

---

[5] The Delaware suit still makes demand futility arguments with respect to Link, who was formerly Chairman of the Board.

[6] Cytrx's Supplemental Brief includes a chart with side-by-side comparisons of all of the allegations in the instant action and the Delaware suit.

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

Plaintiffs try to downplay the similarities between the actions by arguing that the Delaware suit makes only "passing references to the Dream Team stock promotion scandal." (Opp'n at 21.) But, this is untrue, as the Delaware suit's demand futility allegations are partly premised on the Board's (Ignarro, Kriegsman, Link, Rubinfeld, Selter, and Wennekamp) alleged involvement in the DreamTeam promotional scheme. (RJN, Ex. 9, at ¶¶ 80-82.) Plaintiffs also note that "not a single count in the Delaware Complaint even mentions the Dream Team and, in fact, every count exclusively involves alleged spring-loaded options." (Opp'n at 21; *see also* Pls.' Supp. Br. at 4.) This may be true, but when describing the defendants' alleged breaches of fiduciary duty in the body of the Complaint, the Delaware plaintiffs claim that the defendants breached their duties of loyalty, good faith, and disclosure "by failing to ensure CytRx adequately disclosed the use of DreamTeam to promote its stock." (*See* RJN, Ex. 9, at ¶ 72.) Thus, we can be assured that the DreamTeam allegations will be sufficiently litigated in Delaware. Plaintiffs also claim that the crux of the Delaware suit is the spring-loaded option awards, which are "merely part of a much larger picture posed in this Action." (Opp'n at 21; *see also* Pls.' Supp. Br. at 4.) We disagree. As CytRx notes, Plaintiffs' Complaint is replete with allegations regarding the spring-loaded stock options and Counts VI and VII are solely based on Defendants' receipt of such options. (*See, e.g.*, Compl. at ¶¶ 52-55, 62-64, 90-93.) Finally, Plaintiffs argue that the suits do not involve the same relevant period of wrongdoing because this Action refers to activity that began in 2013 and the Delaware suit "contains no defined 'relevant period.'" (Pls.' Supp. Br. at 5.) While the Delaware suit does not specifically identify 2013 as the relevant year, as CytRx points out—"Plaintiffs do not, and cannot, point to any allegation in the Delaware Derivative Action outside the time period at issue here." (Cytrx's Supp. Br. at 5.)

Fourth, each suit contemplates the same remedies on behalf of the corporation: injunctive relief, damages, and disgorgement. Based on these similarities, we believe that the Delaware suit will provide relief for all of Plaintiffs' claims.

      **B.**      **The Desirability of Avoiding Piecemeal Litigation**

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (internal quotation marks removed). Here, as discussed above, the cases' allegations are substantially similar and proceeding simultaneously would require resolution of many overlapping dispositive issues. There is no reason why we need to rule on these issues in addition to the Chancery court, especially when we may end up reaching conflicting results. *Cf. In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1172 ("[M]ultiple courts proceeding apace on these substantially similar claims is a considerable waste of judicial resources in light of the significant complexity of this litigation."). Moreover, contrary to Plaintiffs' arguments, derivative lawsuits present the kind of exceptional circumstances which would result in "special concern about piecemeal litigation." *See Travelers*, 914 F.2d at 1369. Piecemeal proceedings in derivative suits waste the resources of the real party of interest and "create a serious risk of conflicting results that could impact thousands of shareholders." *McCreary v. Celera Corp.*, 2011 WL 1399263, at *4 (N.D. Cal. Apr. 13, 2011); *Ash v. Alexander*, 2000 WL 20704, at *3 (S.D.N.Y. Jan. 12, 2000) (when "both actions are derivative shareholder suits arising out of the same events and involving overlapping claims . . .

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

[c]ontinuation of both suits . . . risks inconsistent findings with respect to the real party in interest in both actions").

### C. Whether Federal or State Law Provides the Rule of Decision

"Under the 'internal affairs' doctrine, the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders." *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007). "[T]he Delaware Court of Chancery . . . unquestionably has a well-recognized expertise in the field of state corporation law . . . ." *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1173 (internal quotation marks and citation removed). As CytRx was incorporated in Delaware, Plaintiffs' derivative claims against its officers are governed by Delaware law. Thus, it seems proper that the Chancery Court rule on these state law disputes. Plaintiffs argue that the prospect of deciding "routine issues of state law" does not weigh in favor of abstention, citing *Travelers*, 914 F.2d at 1370. But, in *Travelers*, the plaintiff's breach of fiduciary duty claims arose in the insurance context. In the corporate director liability context, other courts have found that because of the Chancery Court's expertise in the area of Delaware corporate law, it is better suited to rule on such issues. *See, e.g.*, *McCreary*, 2011 WL 1399263, at *4 ("The unique expertise of the Delaware court in applying Delaware corporate law militates in favor of allowing the Delaware court to rule on those claims."); *Bushansky*, 2012 WL 3276937, at *4 ("[J]udges in Delaware are more familiar with Delaware state law than judges in California. Given the high likelihood that this entire case is governed by Delaware law, there is wisdom in letting Delaware judges decide these issues."); *see also Clark*, 376 F.3d at 688 ("[A] state court's expertise in applying its own law favors a *Colorado River* stay.") (internal quotation marks omitted).

### D. Whether the State Court Proceedings Can Adequately Protect the Federal Litigants' Rights

"This factor involves the state court's adequacy to protect federal rights . . . ." *Travelers*, 914 F.2d at 1370. Plaintiffs' suit is premised solely on Delaware law and the Chancery Court has the authority to grant all relief sought on behalf of the company. *Cf. R.R. St. & Co.*, 656 F.3d at 981 ("[I]f there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate."); *Bushansky*, 2012 WL 3276937, at *5 ("This factor is most often employed, and is most important, where there are exclusively federal claims that could not be brought as part of the state-court action."). Accordingly, we are confident that the Chancery Court can fairly and competently adjudicate Plaintiffs' claims and will protect the rights of all Parties.

### E. Neutral Factors

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-6414-GHK (PJWx) | Date | January 8, 2015 |
|---|---|---|---|
| Title | *In re: CytRx Corp. Stockholder Derivative Litigation* | | |

Four of the *Colorado River* factors are neutral here. First, neither court has assumed jurisdiction over any property at stake.[7] Second, neither forum is more convenient than the other as CytRx's corporate headquarters are in this district and it was incorporated in Delaware. *Cf. Bushansky*, 2012 WL 3276937, at *3 (finding this factor "neutral" when comparing convenience of corporate headquarters and state of incorporation); *McCreary*, 2011 WL 1399263, at *4 (same). Plaintiffs argue that "there is nothing located in Delaware that is relevant to this Action," ignoring the fact that the corporation was incorporated in Delaware, and Delaware law will provide the rule of decision. (*See* Pls.' Supp. Br. at 6.) Third, as both California and Delaware have an interest in this litigation, forum shopping does not seem to be at play here.[8] Fourth, although the Delaware action was filed approximately one month before the instant suit, neither has involved any substantive proceedings. *See Moses H. Cone*, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."); *see also Colorado River*, 424 U.S. at 820 (finding "significant" that there was an "absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss").

## IV. Conclusion

On balance, the relevant factors are either neutral or weigh in favor of a stay. Thus, while *Colorado River* abstention is only justified in extraordinary circumstances, we think it would be appropriate here, given the similarity of claims, parties, and state law issues involved. Further, as we are granting only a stay rather than dismissal, our "federal forum will remain open if for some unexpected reason the state forum does turn out to be inadequate." *See Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243 (9th Cir. 1989) (internal quotation mark omitted). Accordingly, we **GRANT** CytRx's Motion and **hereby STAY** this action until the Delaware Derivative Litigation is resolved. The clerk is directed to administratively close this matter pending further order from the Court.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Deputy Clerk | | Bea |

---

[7] Plaintiffs argue that "the absence of this factor weighs against jurisdiction" and cites *Travelers*, 914 F.2d at 1369, in support of this proposition. But, the Ninth Circuit did not hold as such, and actually found that in certain cases, "this factor is irrelevant to the *Colorado River* determination." *Id.*

[8] CytRx argues that because Plaintiffs have allegedly acted in contravention of CytRx's forum-selection bylaw, they have engaged in improper forum shopping. (*See* Cytrx's Supp. Br. at 10.) In light of our disposition of this Motion, we need not decide the applicability or validity of that bylaw.